## SALTMOUNT OIL CORPORATION et al. v. IMPERIAL CROWN ROYALTY CORPORATION.

### No. 1579.

Court of Civil Appeals of Texas. Eastland.

Oct. 2, 1936.

Rehearing Denied Nov. 6, 1936.

Woodward & Coffee, of Big Spring, and Lasseter, Simpson & Spruiell, of Tyler, for appellants.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellee.

GRISSOM, Justice.

The Imperial Crown Royalty Corporation (plaintiff below and appellee herein, hereinafter referred to as plaintiff) entered into a written agreement with the Monongahela Oil Company, Saltmount Oil Corporation, and Argo Royalty Company (hereinafter referred to as defendants) containing the following provisions:

"That Whereas, First Party (being the plaintiff herein) owns certain oil and gas royalties in lands situated in the State of Texas and further identified on statement referred to as Exhibit 'A' attached to and made a part hereof, and First Party desires to sell to Second Parties, (the defendants) and Second Parties desire to purchase from First Party all of said royalty interests.

"Now Therefore, Know All Men by These Presents: That the parties hereto have agreed and do hereby agree as follows:

"First Party agrees to present to the attorneys for Second Parties Abstract of Title and such other records as said attorneys may desire in order that said attorneys may pass upon the title of First Party to all of said royalty interests, and the attorneys for Second Parties shall examine said titles with as little delay as possible.

"If said attorneys, on completion of the examination of said titles, are satisfied as to the following items:

"(a)  That said titles are satisfactory,

"(b)  That this agreement and the sale to be completed hereunder are in compliance with the laws of the State of Texas;

then Second Parties agree to pay to First Party the sum of Thirty Thousand Dollars ($30,000) in cash, and First Party agrees to deliver to Second Parties at the time of said payment good and sufficient deeds, satisfactory to said attorneys, covering all of said royalty interests. One-fourth of said interest in each of said royalties shall be deeded to said Saltmount Oil Corporation, one-fourth shall be deeded to said Argo Royalty Company, and one-half shall be deeded to said Monongahela Oil Company; and such deeds shall be supported by such resolutions adopted by First Party as may be deemed necessary by the attorneys acting for Second Parties."

Defendants entered into a written contract with one Mulvey, defendants being designated therein as "first parties" and Mulvey as "second party," which contract contained the following provisions:

"That Whereas, First Parties have entered into, or are about to enter into, an agreement with the Imperial Crown Royalty Corporation, a Delaware Corporation, for the purchase of certain oil and gas royalty interests, identified more fully on the statement attached hereto and made a part hereof marked Exhibit 'A'; and

"Whereas, First Parties desire to give second party an option to purchase said royalty interests on the terms set forth below.

"Now Therefore, Know All Men by These Presents, That in consideration of the sum of Ten dollars ($10.00) paid to First Parties by Second Party, the receipt of which is hereby acknowledged, the parties hereto have agreed and do hereby agree as follows:

"Should First Parties obtain said royalty interests then First Parties hereby grant to Second Party an option to purchase all of said royalty interests at the total price of Forty Five Thousand Dollars ($45,000.00). The option hereby given shall extend to December 1, 1933. On or before December 1, 1933, Second Party, should he desire to exercise this option, shall give notice in writing to each of said First Parties to that effect, such notice to be delivered in each case to each of First Parties at its office in the First National Bank Building, Denver, Colorado.

"Second Party shall on or before December 1, 1933, pay to First Parties the sum of Five Thousand Dollars ($5,000.00) in connection with the exercise of this option, said sum to be divided one-half to  said

Monongahela Oil Company, one-fourth to said Saltmount Oil Corporation, and one-fourth to said Argo Royalty Company. Second Party shall also on or before the first of each month following December 1, 1933, make a payment of Five Thousand Dollars ($5,000.00) under this option to said parties in the manner hereinbefore provided. When the last installment of said purchase price of Forty Five Thousand Dollars ($45,000.00) has been paid to First Parties, First Parties shall deed to Second Party, or to his nominee, all of their right, title, and interest in said oil and gas royalties. Such deeds shall not contain any warranty on the part of any of First Parties except the warranty that they have not sold or otherwise incumbered said royalty interests during the time they may have held the same.

"It is understood that payments for oil and gas will be made on said royalty interests or some of them from the time when they may have been obtained by First Parties as aforesaid, and that when the total of said payments, plus the total of the payments made by Second Party hereunder, shall be Forty-Five Thousand Dollars ($45,000.00), Second Party shall be entitled to receive said deeds as it is agreed that at such time the First Parties shall credit to said purchase price the payments thus made to them."

Each of said contracts was dated August 30, 1933.

On September 12, 1933, plaintiff executed royalty deeds conveying to defendants the property covered by the foregoing contracts as provided in the contract first mentioned.

Plaintiff did not make the first or any subsequent payment in accordance with the terms of the written "option agreement," and defendants thereafter asserted ownership of the property in controversy.

Plaintiff alleged in substance the true agreement to be that defendants loaned plaintiff $30,000, for the use of which during approximately one year plaintiff was to pay $15,000 as interest, the $45,000 (principal and interest) being payable at the times stipulated in the "option agreement," said loan to be secured by a lien on the royalties in question; that under the actual agreement plaintiff was to pay interest in excess of 10 per cent. per annum, in fact, in excess of 50 per cent.; that the contract was usurious; that the form of the instruments was adopted as a cloak to conceal the usurious agreement. Plaintiff

prayed for judgment for title to the properties conveyed by it to the three defendants "subject to a lien in favor of the defendants to secure the re-payment of said loan of $30,000, less oil runs received by them." In the alternative, and in the event the contract be held a conditional sale and not a mortgage, plaintiff prayed for judgment for title conditioned upon payment of $45,000 less the oil runs.

Omitting the parts of the charge not necessary to a decision of the case, it was submitted to the jury as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the parties, the plaintiff and defendants, intended by the execution and delivery of the written instruments dated August 30, 1933 and September 12, 1933, that these written instruments should constitute a mortgage in fact, given as security for debt, as the word 'mortgage' will be hereinafter defined to you in this charge?

"By the term 'mortgage,' as used in the foregoing special issue is meant: A mortgage is a conveyance of an estate or property by way of a pledge for the security of a debt, to become void on payment of the debt. It matters not what the language used or the form imparted to an instrument; if it was intended to secure the payment of money, it is construed as a mortgage.

"In connection with the foregoing instructions on the term 'mortgage', you are further instructed that a deed absolute on its face is to be construed as a mortgage if from all the circumstances preceding and attending its execution such was the intention of the parties thereto."

■■ The Saltmount and Argo Companies objected to the charge, among other things, because the language used following the issue submitted constituted a general charge and was a comment upon the weight of the evidence. We believe the assignments presenting such contentions must be sustained and the judgment reversed.

The statements in the charge that "it matters not what the language used or the form imparted to an instrument; if it was intended to secure the payment of money, it is construed as a mortgage" and "in connection with the foregoing instructions on the term 'mortgage,' you are further instructed that a deed absolute on its face is to be construed as a mortgage if from all the circumstances preceding and attending its execution such was the intention of the

parties thereto," although they may be correct as abstract propositions of law, constitute a general charge upon the law applicable to the case, or a phase thereof, which is not permitted when a cause is submitted upon special issues. The quoted statements were not explanations or definitions of legal terms necessary to enable the jury to properly pass upon the issue submitted as provided by article 2189, R.S.1925. Lamb v. Collins (Tex.Civ.App.) 93 S.W. (2d) 490; Humble Oil & Refg. Co. v. McLean (Tex.Com.App.) 280 S.W. 557; Texas & P. Ry. v. Perkins (Tex.Com.App.) 48 S.W.(2d) 249; Radford Groc. Co. v. Andrews (Tex.Com.App.) 15 S.W.(2d) 218; Gattegno v. The Parisian (Tex.Com.App.) 53 S.W.(2d) 1005; Terrell Wells Health Resort Inc. v. Severeid (Tex.Civ.App.) 95 S.W.(2d) 526; Standard v. Texas Pacific Coal & Oil Co. (Tex.Civ.App.) 47 S.W. (2d) 443; Stokes v. Snyder (Tex.Com.App.) 55 S.W.(2d) 557; Kemper v. Police & Firemen's Ins. Ass'n (Tex.Com.App.) 48 S.W.(2d) 254; Conn. General Life Ins. Co. v. Warner (Tex.Civ.App.) 94 S.W.(2d) 514; Kansas City, M. & O. Ry. Co. v. Moore (Tex.Civ.App.) 11 S.W.(2d) 335; Besteiro v. Besteiro (Tex.Civ.App.) 18 S. W.(2d) 829; Winters Mut. Aid Ass'n v. Reddin (Tex.Com.App.) 49 S.W.(2d) 1095. When a cause is submitted on special issues and a general charge is given on any phase of the case, injury to the objecting party is presumed. Humble Oil & Refining Co. v. McLean, supra.

Further, we think that an instruction that *"it matters not what the language used or the form imparted to an instrument;* if it was intended to secure the payment of money, it is construed as a mortgage" and *"a deed absolute on its face is to be construed as a mortgage* if from all the circumstances preceding and attending its execution such was the intention of the parties thereto"* (italics ours), constituted, under the facts of this case, a comment on the weight of the evidence. Brown v. Cassidy-Southwestern Commission Co. (Tex.Civ. App.) 225 S.W. 833; Shelton v. Shelton (Tex.Civ.App.) 281 S.W. 331.

■ The real question to be decided was whether the instruments in the form in which they were written (a deed and option to purchase) showed the real agreement; that is, a sale with option to purchase, as contended by the defendants, or whether the true agreement was a loan by defendants to plaintiff of $30,000 for which plaintiff was to pay $15,000 interest, and to se-

cure the payment of which plaintiff had pledged its property. Under such a situation it does matter "what the language used or the form imparted to an instrument." If the language used and the form imparted is that of a deed, the instrument itself constitutes at least prima facie evidence that the parties intended a conveyance of title and not a mere lien. Under such circumstances it has been held that, before the instrument may be construed to be something different from that which it purports to be, "the grantor must establish his contention by convincing evidence, or, * * * with 'clearness and certainty.' " 29 Tex.Jur. pp. 818, 819; Howard v. Zimpelman (Tex.Sup.) 14 S.W. 59, 62; McLean v. Ellis, 79 Tex. 398, 15 S.W. 394 Although the latter statement may be the law, the court may not submit the cause upon special issues and so instruct the jury. To do so would result in the giving of a general charge. The language of the charge in the instant case may have been construed by the jury as a statement or suggestion by the court that the jury need not give consideration to the fact that the instrument as written was a deed, to the evident prejudice of defendants who were asserting that it was in fact what it purported to be. The presumption is that the instrument is in fact what it purports to be. Howard v. Zimpelman (Tex.Sup.) supra.

The Monongahela paid $15,000 and the Saltmount and Argo $7,000 each of the $30,000 paid to plaintiff. The Monongahela, about January 20, 1934, sold to the Argo Company the royalties conveyed to it by the plaintiff. The Saltmount and Argo Companies alone appeal.

It was understood at the time the option to purchase the property in question was delivered to Mulvey that such option was for the benefit of plaintiff. Such option was assigned by Mulvey to De Loach (president of the plaintiff company) and by him to the plaintiff. Upon the trial it was agreed that the proceeds from the royalties received by the defendants amounted to $21,635.93. The jury having answered the issue submitted to it "yes," that is, that the parties intended by execution of the instruments heretofore mentioned that they should constitute a mortgage, the court thereupon concluded as a matter of law that the contract was usurious and entered its judgment that plaintiff recover title to and possession of all the property in controversy subject to a lien in favor of Argo and Saltmount Companies securing the

payment of $8,364.07 (being the $30,000 alleged to have been loaned, less $21,635.93 received by defendants as income from the royalties).

Since the cause must be reversed because of the errors discussed, and since the record and briefs are of unusual length, we shall discuss only such assignments as are necessary to the present disposition of the case and those questions that will probably arise upon another trial.

■ ■ Appellants strenuously insist that there was no evidence, or at least the evidence was insufficient, to authorize the court to submit the question, or the jury to find that a mortgage was intended. To discuss, or even to mention, all the facts and circumstances in evidence which could have been considered as proof of such intention, would extend this opinion 'to an unreasonable length. It is sufficient to say that there is much testimony from which the jury may have concluded that the Monongahela and the Saltmount understood and intended the transaction as a loan. It is more difficult to find testimony that may reasonably be construed as connecting the Argo with the alleged loan. However, we are of the opinion that such evidence was introduced and is sufficient to make the question of whether a loan or sale was intended one of fact as to all defendants. There may be evidence from which it might have been concluded that the Argo was an innocent purchaser, but such contention is not made. It may have been regarded by the jury as highly significant that, while appellants insist no loan was intended, and therefore no pledge (but a sale) of the property, under the terms of the "option agreement" the income from such property, although defendants say the property belonged to them, was to be credited on plaintiff's option. Had production and price of oil increased, defendants might have found the $45,000, the price of the royalties stipulated in the option agreement, already paid out of their own property. It would have been an unusual situation had Mulvey been able to require a conveyance by defendants to himself, or his assignee, of royalties valued at $30,000 to $50,000 without payment of a penny, upon the theory that the sellers had received payment for their own property out of revenues from such property. See Loving v. Milliken, 59 Tex. 423; Gray v. Shelby, 83 Tex. 405, 18 S.W. 809; Dendy v. Cockerham (Tex.Civ.App.) 82 S.W.(2d) 756;

Miller v. Wood (Tex.Civ.App.) 85 S.W. (2d) 796; Williams & Chastain v. Laird (Tex.Civ.App.) 32 S.W.(2d) 502.

It is forcefully argued by appellants that the testimony of plaintiff's president shows that he did not understand the transaction as a loan and mortgage; that, plaintiff's board of directors having passed a resolution approving a sale to defendants, the status of the transaction was thereby fixed as a sale; that, plaintiff's president having written an agent of the Argo Company his reasons for making the "sale" and having testified (1) that he made up his mind in November to exercise the option, and (2) that until December 11th, when he gave notice he intended to exercise the option, he "construed it" that he could take up the royalties or not at his election, and that, if he did not make the payments, the royalties would belong to defendants and "that was pursuant to all the antecedent agreements," the legal result is that plaintiff is bound by such testimony, and the court should have instructed a verdict for defendants.

It is admitted that the letter from plaintiff's president giving the reasons for the "sale" was written at the request of a representative of one of the defendants. There is no direct testimony explaining it otherwise. Neither is there direct testimony explaining why plaintiff's board of directors passed a resolution authorizing a sale. There is no direct explanation by De Loach of his testimony on cross-examination with reference to the option. However, when all of his testimony is considered together, as it must be, we think it only results in apparent inconsistency and that the jury could have construed one portion of his testimony in light of other portions in order to arrive at the real meaning and effect of the statements made. It should be remembered in interpreting De Loach's testimony that the substance of it was that the transaction was to be in the form in which it was placed for the purpose of concealing the usurious contract. We think his testimony on cross-examination is susceptible of the interpretation that he was speaking of the form in which the transaction was placed, rather than what he contended was the true agreement. Young v. Blain (Tex.Com.App.) 245 S.W. 65; Williams & Chastain v. Laird (Tex.Civ.App.) 32 S.W.(2d) 502; Melburn v. Webb (Tex. Civ.App.) 277 S.W. 800. Further, De Loach was not a party to the suit. He was but an agent of the plaintiff corporation and the plaintiff was not bound by his testi-

mony. 7 R.C.L. p. 660; Fletcher's Encycl. Corporations, vol. 2, p. 733.

It is also contended that the laws of Colorado instead of the laws of Texas should govern and control in determining whether the contract is usurious. The evidence discloses that, even if the transaction here is a loan and mortgage, it is not in violation of the laws of Colorado. The contract of purchase of the royalties recites that plaintiff "owns certain oil and gas royalties in land situated in the State of Texas." It provides that defendants' attorneys are to be satisfied "(b) that this agreement and the sale to be completed hereunder are in compliance with the laws of the State of Texas." Before payment was made, the Argo Company required an opinion of a Texas lawyer as to the validity of the transaction under the laws of Texas. It appears that the parties contracted with reference to the laws of Texas, intending that such laws should govern the transaction, and for that reason the contract should be construed in the light of the laws of Texas rather than Colorado. But, if this be not established as a matter of law, there is still another reason why the laws of Texas should govern the construction of the contract and determine its validity and effect. The contract recites that the land in question is located in Texas. So far as the title to land in Texas is concerned, it is definitely settled that the laws of Texas alone govern the construction and determine the effect and validity of contracts transferring or disposing of such real estate whether by deed or otherwise. Ball v. Norton (Tex.Com.App.) 238 S.W. 889; Paschal v. Acklin, 27 Tex. 173; Holland v. Jackson (Tex.Civ.App.) 19 S.W.(2d) 428; Hamilton v. Glassell (C.C.A.) 57 F. (2d) 1032; 9 Tex.Jur. 359.

It seems to us that it would be more logical to inquire whether there was an agreement for a loan of $30,000, secured by a lien on the royalties, for the use of which $15,000 was to be paid as interest, than to submit the special issue in the form presented on the trial of this case. There is no dispute as to the time when the $45,000 was due. If the jury found in answer to the inquiry suggested that the true agreement was for a loan of $30,000 to be secured by a lien on royalties, and that $15,000 was to be paid as compensation for the use of the $30,000 during the time stipulated, about which time there is no dispute, then it would necessarily result, as a matter of law, that the transaction was a usurious loan and mortgage, and not a sale with option to purchase. Such issue would contain the essential elements of the contract alleged by plaintiff. The language here used should not be construed as meaning that any defensive issue raised by the pleadings and evidence should not be submitted. It is evident that the court in submitting the issue followed the form suggested in Knox v. Brown (Tex.Com.App.) 16 S.W.(2d) 262. In view of another trial, we suggest that the form given in said case is not applicable to the instant case.

All assignments not discussed have been carefully considered and are overruled. The judgment is reversed and the cause remanded.

### On Rehearing.

All parties have filed motions for rehearing. Our observations shall not be directed specifically to any particular motion.

It is suggested that in our original opinion we indicated the view that the form of the issue in Knox v. Brown (Tex.Com. App.) 16 S.W.(2d) 262, is not applicable to this case, without sufficiently setting forth the reasons for such statement. In the Knox Case the contract was a written contract. All terms of the contract were in writing. The nature of the written contract, i. e., whether a deed or a mortgage, was wholly dependent upon, and determinable by, the fact of intention. If intended by the parties as a deed it was a deed, and if intended as a mortgage it was a mortgage.

In the instant case the real issue was: Did the parties make the contract alleged? If they made the contract alleged, it was a parol contract. It was provided in that alleged contract that there should be certain written instruments. Execution of such written instruments was rather a part performance of the contract than a part of the contract itself. If there was any such contract as the one alleged, the written instruments did not express the contract, were not intended by any of the parties to express the contract, but on the contrary, their function was to disguise and conceal the real contract. If the contract was as alleged by the plaintiff, the law would declare the written instruments to be a mortgage. It was not necessary for any of the parties to have a specific intent that the written instruments were to be mortgages or deeds and an option, since the essential and controlling intention was in-

volved in the question of whether there was any such contract made as that alleged by the plaintiff. It is true that, if the alleged contract was made, there could not have existed understandingly an intention that the instruments were to be what, upon their face, they purported to be, and not a mortgage, because that would demonstrate conclusively that the parties made no such contract as plaintiff claimed. But to submit as the only issue the question of the parties' intention as to the nature of the written instruments was but to submit an evidentiary fact, leaving the real issue a matter of inference. We sustained the submission of the issue in the form it was stated upon the view that it was an attempted submission of the real issue, the form of which, not being objected to it, was to be treated as a correct submission. Duff v. Roeser & Pendleton (Tex.Civ.App.) 96 S.W.(2d) 682.

■ The several motions for rehearing demonstrate the likelihood of misunderstanding and error resulting from the submission of a special issue in such form as to call for the finding of a mere evidentiary fact. It is earnestly contended that De Loach made such admissions regarding the written instruments as to preclude recovery by plaintiff as a matter of law. It must be admitted that his evidence was very unsatisfactory, but it must be borne in mind that, according to plaintiff's theory of recovery, the written instruments were to show upon their face a valid transaction. Evidence of acts and conduct in the nature of efforts to meet requirements to make them so show was not inconsistent with the existence of the contract alleged. The same is true of the references made by the witness to the instruments as though they were what they purported to be. Hence, De Loach having testified to facts supporting his contention as to the making of a usurious contract, his other testimony, which it is insisted as a matter of law conclusively showed the contrary, at most created such an uncertainty as to the entire purport of his testimony as to make an issue for the decision of the jury.

■ The contention to the effect that the rule forbidding parol evidence to vary the terms of a written contract is applicable in the decision of this case seems to us to grow out of the same failure to recognize the real issue involved. If usury existed, it was by virtue of a contract. It makes no difference how much compensation is paid for the use of money, unless the promise to pay is a contractual obligation. This question this court had occasion to consider and determine in Continental Sav. & Bldg. Ass'n v. Wood (Tex.Civ.App.) 33 S.W.(2d) 770. If the contention were correct that the parol evidence rule is applicable to a case like this, then a claim of usury never could be predicated on a written contract, unless the contract was usurious on its face. As said above, the contract alleged by plaintiff was parol. The written instruments were only incidents. Plaintiff was entitled if he could to prove the contract alleged, and to do so it was necessary to contradict the written instruments. If there was a usurious contract as alleged by plaintiff, in no other way could the purpose to conceal it by apparently valid instruments be avoided. Just as certainly, we think, as that a contract partly in writing may indirectly provide for the payment of usurious interest by reason of which the Constitution and laws give a remedy, just so certainly does the right to prove the terms of the real contract exist.

Traceable, we think, to the same misconception of the real issue involved, is the contention of the Argo Royalty Company to the effect that, conceding that some of the parties intended the instruments to be mortgages, there was no evidence to show that the Argo Royalty Company shared such intent. Upon that point a better showing is made, we think, with reference to the issue in the form it was submitted than could have been made with reference to the issue properly stated. If the alleged contract was made, then we think there was such evidence relating to the dealing of the defendants among themselves and with the plaintiff as to warrant an inference that the Argo Royalty Company was a party to the contract. That, after all, is the real question sought to be presented by the contention that there was no evidence to show that the Argo Royalty Company, as distinguished from the other defendants, intended the written instruments to be a mortgage rather than what they purported to be.

Being unconvinced of any error in our decision, the several motions for rehearing will be overruled.