Carlos I. MIRO, Appellant,

v.

ALLIED FINANCE COMPANY,
Appellee.

No. C14–82–129CV.

Court of Appeals of Texas, Houston
(14th Dist.).

April 14, 1983.

Daniel J. Kasprzak, William T. Green, III, Green, Downey, Patterson & Schultz, Houston, for appellant.

George L. Bowles, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

SEARS, Justice.

This is an appeal from a judgment entered after a bench trial, wherein the Court found for Appellee, Allied Finance Company (Appellee or Allied), in the amount of $14,861.52, interest, and attorney's fees. We affirm.

After a successful banking and corporate law practice in Cuba, Appellant immigrated to the United States in 1960, and commenced working as a law clerk/adjuster in the Legal Department of Appellee. From 1963 to 1965, Appellant attended Southern Methodist University School of Law, and paid his tuition with funds loaned to him by Appellee, while continuing to work for Appellee. Later, Appellee forgave a portion of this educational loan. After being licensed to practice law in 1966 and a brief absence from Appellee's employ, Appellant was re-employed by Appellee as Associate House Counsel, and served in such capacity from 1967–1971. In 1971, Appellant was promoted to Corporate Counsel and Secretary of Appellee, which entailed giving le-

gal opinions on corporate documents, forms, contracts, and loan agreements. In addition, Appellant frequently advised Allied's Chairman and Chief Executive Officer, David Steere, who relied exclusively on Appellant's legal advice.

While working for Appellee, Appellant became involved in activities of the State Bar of Texas and the Dallas Bar Association, and became recognized as a leading authority on the Consumer Credit Code. He served as Chairman of the Consumer Credit Committee of the State Bar of Texas, and attended Continuing Legal Education seminars on the Consumer Credit Code and the Federal Truth-in-Lending Act. In addition, Appellant spoke at a seminar on the Consumer Credit Code, and assisted the Association of Consumer Finance Companies in hearings before the Texas Legislature. Finally, the State recognized his expertise in this area when they asked him to prepare a pocket part update on the Consumer Credit Code.

Between May 17, 1973 and November 28, 1975, while serving as Allied's Corporate Counsel and Secretary, Appellant executed eleven promissory notes in favor of Appellee, each entitled "Texas Loan Contract and Security Agreement." During that same period, Appellee utilized, for purposes of loan repayments from its employees, a form entitled "Payroll Deduction-Acceleration Agreement." The eleven loans made to Appellant by Allied were payable by the payroll deduction agreement or by personal check, at the option of Appellant. He utilized both methods. At no time did Appellant advise or inform Appellee's Chairman and Chief Executive Officer, David Steere, that he considered the loan instruments, "Payroll Deduction-Acceleration Agreements," or interest rates to be illegal. On March 2, 1977, Appellant unilaterally terminated his employment relationship with Appellee. Forty-one days later, Appellant filed suit against Appellee, alleging that Appellee's loans were in violation of the Consumer Credit Code and were usurious, and demanded that he be repaid the excess interest he had paid on the loans, in addition to statutory damages of double the interest charged, as provided by Tex.Rev. Civ.Stat.Ann. art. 5069 (Vernon 1971 & Supp.1982–1983). Appellee filed a counterclaim alleging that Appellant had breached his fiduciary duty and his duty of ordinary care as its attorney, and demanded that it be repaid the remaining balance due on its final loan to him. Shortly thereafter, Appellant filed a complaint with the Texas Consumer Credit Commissioner and the Federal Trade Commission, alleging that Appellee's legal instruments were in violation of state and federal laws. He also complained to the Equal Employment Opportunity Commission, claiming that Appellee had discriminated against him on the basis of his Cuban origin.

On May 23, 1977, in the midst of pre-trial developments, Appellant sent a letter to David Steere threatening to file a class action suit against Allied for violation of the Texas Consumer Credit Code, Tex.Rev. Civ.Stat.Ann. arts. 5069–1.01—5069–8.06 (Vernon 1971 & Supp.1982–1983), and the Texas Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Com. Code Ann. §§ 17.41–17.63 (Vernon Supp. 1982–1983), unless his demands were satisfied. Simultaneously, Appellant sent a separate letter to Appellee's attorney, offering to settle all of his complaints for $56,895.80, provided that:

1) the sum demanded be received within eight days;

2) appellee cause Lomas & Nettleton to stop the foreclosure sale on appellant's Dallas home, and further agree to reinstate his mortgage contract upon payment of past due installments, waiving accrued attorney's fees;

3) appellee cancel the balance due on the remaining loan with appellant;

4) appellee furnish appellant written assurance that no derogatory remarks were made to credit agencies by either appellee or Lomas & Nettleton; and, if so, that such remarks have been deleted from his credit records;

5) appellee's Chairman sign a letter of recommendation, drafted by appellant,

in order that appellee obtain other employment as an attorney; and, that appellee pledge that it will not jeopardize his ability to practice law and obtain other employment.

After a bench trial, the court entered a take nothing judgment in favor of Appellee concerning Appellant's allegations of statutory violations, and awarded Appellee $14,861.52, plus interest thereon, and attorney's fees, on Appellee's counterclaim.

■ In his first point of error, Appellant alleges that the trial court erred in finding that the wage assignments were not intended to be used as security for his loans or were used only at his option. We disagree.

Specifically, Appellant charges that the error in the court below arose from the fact that Appellee, in utilizing the "Payroll Deduction—Acceleration Agreement", violated Tex.Rev.Civ.Stat.Ann. arts. 5069–3.20(1) & 5069–4.04(1) (Vernon 1971). The cited statutes read as follows:

Art. 5069–3.20. Prohibited practices

(1) No licensee shall take an assignment of wages as security for any loan under this Chapter, but once drawn against any state fund, or any claim against a state fund or a state agency, may be assigned as security of any such loan.

Art. 5069–4.04. Prohibited practices

(1) No lender shall take an assignment of wages as security for any loan made under this Chapter.

Though there have been no cases interpreting what constitutes an assignment of wages, this court finds that the specific language contained in the "Payroll Deduction—Acceleration Agreement" provides guidance which supports Appellee's position.

You are hereby authorized and requested to deduct from my earnings, so long as I am employed by you, the payments (and at the intervals) set forth in said note until the amount thereof is paid in full.

In the event my employment with you is terminated for any reason, you and I understand and agree that the entire unpaid amount of said note shall become due and payable at once, and you shall have the option to offset or deduct such unpaid amount, *insofar as possible,* from any salary, wages, bonus, severance pay, or other employee benefits whatsoever, to which I may be entitled from you. (Emphasis added).

It is clear that, not only was the payroll deduction form drafted as a request for payroll deductions, thus giving borrower/employee notice of the creditor/employer's actions (eliminating any surprise to borrower/employee), but that the language in the last paragraph, "insofar as possible," infers that this payroll deduction agreement becomes void if the borrower/employee leaves employment with Appellee. The unpaid loan balance owed to Appellee by a borrower/employee will not follow the terminated employee from job to job, and will result in Appellee absorbing the monetary loss in the event that the employee benefits to which a borrower/employee is entitled fails to cover the loan balance. Appellee would have no further interest in the former employee's wages. This view is stated similarly in § T9.034 of Appellee's Operation Training Manual.

■ In addition, § T9.034 requires all payments to be made on a salary deduction basis. However, testimonial evidence elicited at trial concerning the repayment duties of Appellant demonstrate that this requirement did not apply to him. Appellant executed eleven notes, five of which were repaid by personal check, while others were repaid by payroll deduction. Whether Appellant elected to repay his loans from Appellee by payroll deduction or by personal check was at his option. Further, since the Consumer Credit Code applies to installment-type consumer loans, it would not apply to those loans which were repaid by single payment. Appellant's first point of error is overruled.

■ In his second point of error, Appellant alleges that the trial court erred in denying his recovery for interest paid on the six notes on which payroll deductions were made. We disagree.

Appellant cites the cases of *Ferguson v. Tanner Development Co.*, 541 S.W.2d 483 (Tex.Civ.App.—Houston [14th Dist.] 1976), *rev'd on other grounds*, 561 S.W.2d 777 (Tex.1977), and *Miller v. First State Bank*, 551 S.W.2d 89 (Tex.Civ.App.—Fort Worth 1977), *aff'd as modified*, 563 S.W.2d 572 (Tex.1978), for the proposition that a recovery is permissible for usurious interest previously paid on a note. However, the Supreme Court, in reversing *Ferguson*, did not reach the question of a recovery of previously paid usurious interest, and further, the court expressed no opinion on the same question in *First State Bank v. Miller*, 563 S.W.2d 572 (Tex.1978), citing *Ferguson*. It is clear that the court deliberately left the question of such recovery open for later determination.

Additionally, Tex.Rev.Civ.Stat.Ann. arts. 5069–1.01—5069–8.06 (Vernon 1971 & Supp. 1982–1983) provide statutory penalties for contracting, charging, or receiving interest greater than authorized. Specifically, arts. 5069–1.06 (Vernon 1971 & Supp.1982–1983) and 5069–8.01 (Vernon 1971 & Supp.1982–1983) impose a penalty of an amount two times the interest contracted for, charged, or received, in addition to reasonable attorney's fees, on a person committing the usurious act. However, the statutes exempt from penalty those persons committing the usurious act if their actions resulted from an "accidental and bona fide error." Reviewing the annotated cases concerning "bona fide error," it becomes clear that the courts of this state have, before the 1979 and 1977 statutory amendments, respectively, interpreted these statutory clauses to hold harmless those lenders who accidentally and inadvertently charged and collected usurious interest. Further, the legislative intent of art. 5069–1.06, amplified in *PJM, Inc. v. Walter Clark Advertising, Inc.*, 624 S.W.2d 282 (Tex.App. Dallas 1981, writ ref'd n.r.e.), was "to protect the citizens of Texas from *abusive* and *deceptive* practices now being perpetrated by unscrupulous operators, lenders, and vendors in both cash and credit consumer transactions. . . ." There is nothing in the record which suggests that the lending practices of Appellee were even remotely close to being abusive or deceptive, under art. 5069–1.06 or its 1979 amendment. It was, in fact, Appellant who was deceptive and unscrupulous, and he cannot be allowed to profit from his deception.

There are no annotated cases construing art. 5069–8.01 (Vernon 1971). However, the courts, in construing art. 5069–8.01 (Vernon Supp.1982), amended in 1977, have imposed a higher duty on lenders with respect to proving "bona fide error": In order to escape liability on violations under the Consumer Credit Code, a person collecting usurious interest must show, "by a preponderance of evidence that (1) the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such violation . . ." This exemption from penalty via bona fide error is a proviso which required the one claiming its protection to carry the burden of establishing that he comes within its terms. *McDonald v. Savoy*, 501 S.W.2d 400 (Tex.Civ.App.—San Antonio 1973, no writ). Reviewing the facts, the evidence is clear that this is a case of bona fide error under the burdens imposed by both arts. 5069–8.01 (Vernon 1971) & (Vernon Supp.1982–1983). Appellee was totally unaware of the usurious nature of the notes, since Appellee's Chairman relied exclusively on Appellant's advice as to the legality of its loans. Not only did Appellant draft the terms of the loan agreements, but he was also responsible for maintaining the procedure of requiring each of Appellee's branches to have their loans systematically rechecked by other branches. Further, serving as the attorney and an officer of Appellee, Appellant had a legal and fiduciary duty to Appellee, which he breached by failing to bring to Appellee's attention the possibility of usurious terms in the notes. As a result, not only is it true that Appellee, through no fault of its own, committed accidental and bona fide errors of charging potentially usurious interest, but that Appellant is now charging Appellee with illegal and usurious activity of which Appellant himself was the initiat-

ing and knowledgeable principal. Though the actions of Appellant and Appellee took place before the statutory amendments, thus requiring this court to apply the original statutes to this case, it is clear that the actions of Appellee satisfied both standards of "bona fide error" contained in the Consumer Credit Code (unintentional error and maintenance of procedures adopted to prevent usurious activity), and we therefore overrule Appellant's second point of error.

█  In his third point of error, Appellant argues that the trial court erred in finding he was not a co-maker on loans executed by Appellant and C & L Aero, Inc., thus precluding him from recovery of statutory damages from Appellee's violation of Tex. Rev.Civ.Stat.Ann. art. 5069–1.04 (Vernon 1971). We find no error.

In reviewing the record, it becomes clear that the loan of May 13, 1974, was memorialized by Defendant's Exhibit No. Three. Appellee's Chairman, David Steere, testified that he authorized the loan only to C & L Aero, Inc., as maker:

Q. Do you recognize the loan application marked Defendant's Exhibit 3?

A. Yes, I recognize it.

Q. Do you recognize some of your notations?

A. Yes, that is my handwriting.

Q. In those notations you state that the loan would be to a corporation, guaranteed by Mr. Miro, at a rate of 15%, didn't you?

A. Yes, I did.

Q. What did you base that on, Mr. Steere?

A. Conversation with Carlos.

Q. What did Mr. Miro tell you?

A. He said that he had organized a corporation to purchase an aircraft, that he he would not be the sole owner, that he had sold an interest to a mechanic and I believe to a commercial pilot and that these men would make quite a contribution towards the maintenance of the plane and I believe that their contributions to the corporation was sufficient to make the payments on the note.

Q. Did he inform you that the maker of any note would be the corporation?

A. Yes.

Q. That was your understanding when you approved that?

A. Well, he was to guarantee the corporation note.

Q. But the maker would be the corporation?

A. Yes.

Q. That was on the basis that you approved the loan, right?

A. I understood that was the only basis on which we could have a legal loan. At that time our cost of money was 11 and we had to charge more than that to come out even whole. I think the maximum legal rate for a corporation was 18 and we did charge him 15, so we did not charge the maximum rate.

In addition, testimony elicited during the examination of Appellant reflects that Defendant's Exhibit Three is the correct instrument. Moreover, evidence elicited during the examination of Appellant, and the credit application completed by Appellant reflected in the record, specifically states: "Interest 15 per cent (interest coverage 1.25 × 11 plus 1 per cent for expenses.) We are lending to corporation endorsed by Carlos so rate is legal." The credit application is initialed "DDS", which Appellant's testimony reflects as being those of Appellee's Chairman, David Steere. As a result, the loan in question, reflected in Defendant's Exhibit Three, provided Appellant as the guarantor of the note, and not as a co-maker. Thus, Appellant would not be entitled to the statutory damages if the loan were usurious. *See Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (Tex. 1976); *Lawler v. Lomas & Nettleton Financial Corp.,* 583 S.W.2d 810 (Tex.Civ.App.— Dallas 1979, no writ). Finally, in light of the fact that Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon 1980) allows corporate loans at a maximum interest of eighteen per cent (18%) per annum, the fifteen per

cent (15%) interest rate charged to C & L Aero, Inc., was not usurious.

With respect to the loan of January 16, 1975, and the issue of usury, the testimony of Appellant and Appellee's Chairman clearly reflects that the loan, memorialized in Defendant's Exhibit Seven, was voided shortly after Appellant executed the instrument, and the loan was never funded. In order to recover damages for usury, there must be a loan. *Crow v. Home Savings Association of Dallas County,* 522 S.W.2d 457 (Tex.1975). Thus, Appellant is precluded from recovering on the loan contract evidenced by Defendant's Exhibit Seven. Appellant's third point of error is overruled.

In his fourth point of error, Appellant alleges that the trial court erred in holding that he was estopped and was not entitled to recover damages due to a breach of his fiduciary duty. We disagree. The law is well settled that the equitable defense of estoppel is not ordinarily available to a claim of usury. *See First State Bank v. Miller,* 563 S.W.2d 572 (Tex.1978). However, in spite of this rule, a plaintiff may not claim usury when he was participated in the deception on the lender. *American Century Mortgage Investors v. Regional Center, Ltd.,* 529 S.W.2d 578 (Tex.Civ.App. —Dallas 1975, writ ref'd n.r.e.). In *American Century Mortgage Investors,* a partnership sued to restrain a trustee's sale under a deed of trust on the grounds that the loan secured by the deed was usurious. The loan was usurious, Appellant claimed, because the interest charged by the note was at higher corporate rates, when in fact the borrower, a partnership, was acting for the benefit of the corporation. Looking closer to the facts, however, the court recognized that the loan arrangement was a subterfuge created by the borrower to conceal the usurious loan of which the lender had no actual knowledge. Justice Guittard, writing for the court, stated:

> Plaintiff's own evidence indicates an intention by the partnership to practice deception upon the lender. . . . If a deceived party is penalized for failure to

investigate, deception will often be rewarded. Accordingly, one who makes a representation on which another relies will not be heard to say that his own representation was not worthy of belief and should not have been accepted without investigation. *Isenhower v. Bell,* 365 S.W.2d 354, 357 (Tex.1963); *Southern States Life Insurance Co. v. Newlon,* 398 S.W.2d 622, 626 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.). On the same reasoning we hold that a borrower cannot assert a subterfuge of its own making to establish usury without proof that the lender participated in or had actual knowledge of the subterfuge.

In the instant case, similar facts show that Appellant served in the high fiduciary capacity as attorney for Appellee, and Appellee relied solely on Appellant for legal advice as to the legality of its transactions. At no time was Appellee aware or did Appellant bring to Appellee's attention the issues of usury or illegality, notwithstanding the fact that Appellant was an expert in consumer credit laws and usury laws. To allow Appellant now to come into court and recover any purported damages due to possibly usurious loans would be to unconscionably reward Appellant for his deception, negligence and breach of fiduciary duties. Accordingly, Appellant's fourth point of error is overruled.

In his sixth point of error, Appellant alleges that the trial court erred in denying recovery of his attorney's fees. Since there is no recovery on his claim, Appellant is not entitled to recover attorney's fees. Therefore, Appellant's sixth point of error is overruled.

The action of Appellant against his former employer, in filing this lawsuit, threatening class action, trying to extort payment of damages, and then demanding a letter of recommendation from his former employer, is so repugnant and contrary to the ethical conduct demanded of an attorney-at-law that it is worthy of special comment by this court.

The judgment of the trial court is affirmed.