Ronald C. COOK, Individually, and
Cook Properties, Appellants,

v.

Richard FRAZIER, Carol Frazier, and
Richard and Carol Frazier
Enterprises, Appellees.

No. 2–88–060–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 15, 1989.

Law Offices of E.L. Atkins and E.L. Atkins, Arlington, for appellants.

English & Walton and Roger D. Walton, Arlington, for appellees.

Before JOE SPURLOCK, II, HILL and FARRIS, JJ.

## OPINION

FARRIS, Justice.

This is a usury case. Ronald C. Cook and Cook Properties (Cook), appeal from summary judgment on the usury claims brought against them by Richard Frazier, Carol Frazier, and Richard and Carol Frazier Enterprises (Fraziers). The trial court found that the choice of law provisions contained in the parties' contracts specifying that Utah law governed their agreements was a subterfuge to avoid the usury laws of Texas and that the contracts provided for interest in excess of twice the lawful rate and entered judgment in favor of the Fraziers for $4,340,517.30: three times the usurious interest contracted for, plus principal, interest and other charges of $58,219.08, totaling $4,398,736.38.

In five points of error, Cook alleges the trial court erred in granting summary judgment on the grounds that: (1) there is no evidence of subterfuge; (2) the issue of subterfuge involves unresolved material questions of fact as to the subjective intent of the parties; (3) the affidavits submitted as summary judgment proof are defective and cannot, as a matter of law, support the judgment; and (4) the Fraziers are estopped by their own conduct and by the statute of limitations from asserting the choice of law provision is a subterfuge. For the reasons set forth below, we overrule points two through five and sustain in part and overrule in part point of error one because we find there is no evidence of subterfuge as to the Utah contract but there is sufficient evidence of subterfuge to grant summary judgment as to the Arkansas contract. In a cross-point, the Fraziers allege error in the admission of an exhibit to the affidavit filed by Cook in opposition to the Fraziers' motion for summary judgment. We sustain this cross-point but find that it was a harmless error.

The judgment is reversed and remanded to the trial court.

In 1981, the Fraziers entered into two contracts for the purchase of time-share investment property located in Utah and Arkansas. The transactions were designed not only to convey land for purposes of enjoyment and investment, but also to provide the Fraziers with a tax shelter which would result from the deduction of a high rate of accrued but unpaid interest.

At Cook's instruction, the Fraziers formed a Utah business partnership to purchase the property. The reason for this was two-fold. The Fraziers needed to form a partnership in order to obtain the business deduction. Texas, until recently, has not recognized husband-wife partnerships. *Harrington v. Harrington,* 742 S.W.2d 722, 724 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Negrini v. Plus Two Advertising, Inc.,* 695 S.W.2d 624, 632 (Tex.App. —Houston [1st Dist.] 1985, no writ); *contra Flint v. Culbertson,* 159 Tex. 243, 319 S.W.2d 690, 691 (1958). Such partnerships are recognized in Utah. Texas, also unlike

Utah, has a legal ceiling for the maximum rate of interest that may be contracted for, charged or received and strict penalties for its violation. TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon 1987).

The Arkansas and Utah properties were conveyed to Frazier Enterprises in two separate contracts. Although only the Arkansas contract was introduced into evidence, it is undisputed that the Utah contract was substantially similar to the Arkansas contract. Both contained a choice of law provision stipulating that the laws of Utah governed the parties' agreement. Both provided for the accrual of interest at the rate of 179% per annum for the first fourteen years and 45% per annum for the remaining sixteen years. Cook alleges and the Fraziers do not dispute that the interest was not charged or paid at the rate it accrued under the terms of the contract. It appears the Fraziers deducted the accrued interest from their federal income tax returns for several years before the Internal Revenue Service disallowed the deduction.

In point of error one, Cook asserts the trial court erred in granting the Fraziers' motion for summary judgment because there is no evidence that the contracts were a subterfuge and a sham to avoid Texas usury law. In summary judgment, the burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not

be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47.

■ Both parties acknowledge that the Texas choice of law rules control. As the forum state, the Texas choice of law rules determine which state's law will be applied to resolve the substantive issues raised. Texas choice of law rules provide that the law of the state with the most significant relationship to the issues in question will be applied to resolve those issues. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420–21 (Tex.1984). Texas law is applicable here because Texas has the most significant contacts to the contracts and transactions in issue. The contracts were negotiated and executed in Texas by Texas residents. All payments under the contracts were made in Texas.

■ Texas law provides that parties to a contract may choose the law applicable to their transaction so long as the law has a reasonable relationship to the contract. *Hi Fashion Wigs Profit Sharing v. Hamilton Investment Trust,* 579 S.W.2d 300, 302 (Tex.Civ.App.—Eastland 1979, no writ); *Securities Investment Co. v. Finance Accept. Corp.,* 474 S.W.2d 261, 271 (Tex.Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). Choice of law provisions, however, may not be utilized as a subterfuge to avoid the usury law that would otherwise apply. "[U]sury laws cannot be evaded under cover of naming a state whose laws shall control the contract." *Dugan v. Lewis,* 79 Tex. 246, 14 S.W. 1024, 1026 (1891). The court reiterated the point a few years later, warning that the law "will not tolerate any contrivance by which it is intended to evade the laws of a state in which the contract is made or sought to be enforced." *Building & Loan Ass'n v. Griffin,* 90 Tex. 480, 39 S.W. 656, 659 (1897); *see also Securities Investment Co.,* 474 S.W.2d at 272. A party's choice of law will be held to constitute a sham or subterfuge when the contacts between the transaction and the chosen state are not reasonably related or when the contacts themselves are contrived in order to substantiate the choice of law. *See Woods–Tucker Leasing Corp. v.*

*Hutcheson–Ingram,* 642 F.2d 744, 753 (5th Cir.1981).

In determining whether the law of Utah has a reasonable relation to the transactions or the choice of Utah law is merely a subterfuge to avoid Texas usury law, we first address the arguments raised by Cook that are applicable to both transactions and evaluate separately the contacts between each transaction and the State of Utah.

■ We are not persuaded by Cook's contention that the choice of Utah law is itself a significant contact with Utah. There must be a reasonable relationship between the chosen state and the transaction. The choice of law must be supported by contacts; it is not a contact in and of itself.

Cook argues that when addressing a claim of usury, the court is bound to adopt a non-usurious, legal interpretation of the contract, if one is available. The authorities cited by Cook, however, concern contracts that contained ambiguous terms which, when construed one way, resulted in a usurious contract and in a lawful contract when construed the other way. *See Home Savings Association v. Crow,* 514 S.W.2d 160, 165 (Tex.Civ.App.—Dallas 1974), *aff'd,* 522 S.W.2d 457 (Tex.1975); *North Texas Building & Loan Ass'n v. Moore,* 82 S.W. 2d 397, 401 (Tex.Civ.App.—Fort Worth 1935, writ dism'd); *Walker v. Temple Trust Co.,* 60 S.W.2d 826, 828 (Tex.Civ. App.—Austin 1933), *aff'd,* 124 Tex. 575, 80 S.W.2d 935 (1935). There is no claim of ambiguity with respect to the terms of the contracts in this case. The fact that the contracts are usurious when construed under Texas law and legal when construed under Utah law does not, as Cook suggests, render the contracts ambiguous. It simply raises the question of whether the inclusion of the choice of law provisions was a sham to avoid Texas usury law.

■ Cook alleges that the formation of Utah partnerships by the parties prior to the transactions constitutes a contact of significance. The evidence presented with respect to the Utah partnerships is as follows:

1. Neither Richard Frazier, Carol Frazier nor Frazier Enterprises has ever maintained a business or residence or transacted business in Utah.

2. Richard and Carol Frazier, the partners of Frazier Enterprises, are Texas residents.

3. Neither R.C. Cook, Cook Properties, Southwest Vacation Homeshares nor Executive International maintains an office in Utah. All maintain an office at the same address in Arlington, Texas.

4. None of these entities had any employees in Utah during the years 1981 through 1985.

Cook has not denied the facts alleged above or offered any evidence to challenge the inference that the partnerships themselves were contrivances designed to cover the fact that the transaction was between Texas entities. In the words of R.C. Cook himself, "the intent was to select a state where a husband-wife partnership was legal and recognized, and where there was no interest ceiling." We do not find the Utah partnerships to be a valid contact with the State of Utah. They were formed as a means to avoid Texas law and substantiate the choice of law.

■ Review of the record indicates there are no contacts between the parties or the contract for the sale of the Arkansas property and the State of Utah. Accordingly, we find the Fraziers established as a matter of law that there is no genuine material fact as to the issue of sham and subterfuge in the choice of law clause in the Arkansas contract. Cook's first point of error is overruled with respect to the Arkansas contract.

■ However, we sustain Cook's first point of error as to the Utah contract. The Utah situs of the property is a reasonable relation between the contract and the State of Utah. The substantial nature of the contact is evidenced by the fact that in the absence of an express choice of law provision, Utah law would remain applicable.

■ When, as is the case here, real property is the essence of a transaction and the underlying contract, the law of the situs controls.[1] Title to realty can be affected only by the *lex loci rei sitae*, the law of the jurisdiction in which it is situated. *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328, 335–36 (1943); *Matter of Marriage of Glaze*, 605 S.W.2d 721, 724 (Tex.Civ.App.—Amarillo 1980, no writ). The validity of an instrument conveying realty is determined by the laws of the jurisdiction in which it is located. *Toledo Soc. for Crippled Children v. Hickok*, 152 Tex. 578, 261 S.W.2d 692, 696 (1953) (devise of remainder interest in Texas realty by Ohio resident governed by Texas law); *Saltmount Oil Corp. v. Imperial Crown Royalty Corp.*, 98 S.W. 2d 418, 423 (Tex.Civ.App.—Eastland 1936, writ dism'd). In *Saltmount*, the court stated that "the laws of Texas alone govern the construction and determine the effect and validity of contracts transferring or disposing of such real estate whether by deed or otherwise." *Id. See also* RESTATEMENT (SECOND) CONFLICT OF LAWS sec. 189 (1971).

Because we find that the location of the land in Utah constitutes a reasonable relation between the contract and the State of Utah, the choice of law provision is valid. Accordingly, Cook's first point of error is sustained with respect to the Utah contract.

In point of error two, Cook argues that the intent of the parties that the choice of law provision be valid and binding is a relevant consideration on the issue of subterfuge and that questions of fact remain on this issue. He cites to the comment of the Texas Business and Commerce Code provision on choice of law for support. Section 1.105 provides that when a transaction bears a reasonable relation to this State *and* another, the parties may agree as to which state's law shall govern. TEX. BUS. & COM.CODE ANN. sec. 1.105(a)

---

1. This rule does not apply when realty is merely collateral or security for a loan and is not the subject of the actual transaction. *See First Commerce Rlty. Investors v. K–F Land Co.*, 617 S.W. 2d 806, 808–09 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); RESTATEMENT (SECOND) CONFLICT OF LAWS sec. 189, comment b (1971).

(Tex. UCC) (Vernon 1968). The comment provides:

> Ordinarily the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs. But an agreement as to choice of law may sometimes take effect as a shorthand expression of the intent of the parties as to matters governed by their agreement, even though the transaction has no significant contact with the jurisdiction chosen.

*Id.*, comment 1.

The contracts at issue involve the sale of land. The Texas Business and Commerce Code is not applicable. *Id.*, secs. 2.102, 2.105 (Tex. UCC) (Vernon 1968). However, even if it were applicable, it would not support Cook's position.

The comment recognizes that the parties' choice of law may shed light on their intentions regarding the matters to be governed by their agreement and can use the provision as a "shorthand" for expressly setting forth the principles that are embodied in the law of the chosen jurisdiction as part of the substance of their agreement. This shorthand, however, cannot be used to replace the laws of the controlling jurisdiction with those of another, just as expressly enumerating intentions in the terms of a contract will not permit parties to contract to do things forbidden by law. Such an interpretation would delete the reasonable relation requirement and permit the selection of laws without qualification. The comment simply points out that the choice of law provision may operate as an indication of their intent with respect to the substance of their agreement; it does not infer that the provision will be upheld as valid.

The comment cannot be construed to state that intent is relevant to the determination of the reasonableness of the contacts or that it can replace these contacts.

In usury cases, the lender need not intend that the interest charged be usurious. He need only intend to make the bargain made. His subjective intent is irrelevant if he contracted for, charged or received interest in excess of the maximum imposed by law. *Cochran v. American Sav. & Loan Ass'n*, 586 S.W.2d 849, 850 (Tex.1979). The intent is presumed to be reflected in the documents signed. *Ashley v. Edwards*, 626 S.W.2d 107, 111 (Tex.App. —Houston [14th Dist.] 1981, no writ). When the contract is usurious on its face, there is no question of intent, it is apparent. *Moser v. John F. Buckner & Sons*, 292 S.W.2d 668, 672 (Tex.Civ.App.—Waco 1956, writ ref'd n.r.e.). Cook's second point of error is overruled.

In his third point of error, Cook argues that the affidavits of Richard Frazier, Art Roark, and James Lanter are defective and cannot, as a matter of law, support the summary judgment. TEX.R.CIV.P. 166a(e) provides that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." We have reviewed the challenged affidavits and find they comply with the requirements stated above.

Richard Frazier's affidavit sets forth the details of the transaction and the Fraziers' dealings with Ronald Cook. Art Roark, a licensed certified public accountant, calculated the interest due at the rate provided for in the contracts and set forth the calculations in his affidavit. James Lanter, the Fraziers' attorney, set out the fees charged to the Fraziers for his services.[2] The contention that the affidavits are "conclusionary" is without merit. Each sets out facts which would be admissible in evidence. The fact that the affidavits do not expressly state that the contents are true and correct or that the affiants are competent to testify about their contents is of no consequence. *Woods v. Applemack Enterprises, Inc.*, 729 S.W.2d 328, 329–30

---

2. The Fraziers have not appealed the trial court's failure to award them their attorney's fees.

(Tex.App.—Houston [14th Dist.] 1987, no writ).

Rule 166a requires that the affidavits affirmatively show competency. Each affiant recited that he was over twenty-one years of age, of sound mind, and that his affidavit was based on personal knowledge. The competence of each affiant to testify as to the facts contained in their affidavits is affirmatively established by those facts. As to Cook's contention that the affidavits are flawed by their failure to expressly state the contents are true and correct, we point out that Rule 166a contains no such requirement. While the affidavits do not recite specifically that the facts contained therein are true and correct, this is the obvious effect when the affidavits are read in their entirety. Each is signed by the affiant and below his signature is the notary public's verification that the affidavit was "subscribed and sworn before me." We hold that the affidavits filed in support of the motion for summary judgment are competent summary judgment proof and overrule Cook's third point of error.

In a cross-point, the Fraziers argue that the trial court erred in overruling their objection to Exhibit "B" attached to R.C. Cook's affidavit filed in opposition to their motion for summary judgment. We agree that Exhibit "B" was hearsay evidence and therefore, erroneously admitted. The Fraziers' cross-point is sustained. We find, however, that the error was harmless. Through Exhibit "B", Cook sought to establish that the actual rate of interest charged and received under the Utah contract was 16.33%, an amount below the legal limit. In light of the fact that the contracted-for rate of interest was in excess of the lawful rate, evidence as to the amount of interest actually paid is not relevant to the disposition of this appeal. *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon 1987).

In his fourth point of error, Cook argues that the Fraziers should be estopped from asserting usury and subterfuge after six years of reliance upon the contract's validity. Cook alleges that the Fraziers understood and acknowledged the interest defined in the contracts would be accrued and therefore allowed as a business interest deduction for federal income tax purposes. He contends the fact that they took the deductions demonstrates their reliance upon the purpose and intent of the transactions, and points out it was only after the Internal Revenue Service disallowed the deduction that they brought their claims.

The fact that the Fraziers relied upon the terms of the contracts will not estop them from asserting their claims of subterfuge and usury. The doctrine of estoppel is based upon deceptive conduct. It consists of five elements:

(1) a false representation or concealment of a material fact,

(2) the representation must be made with knowledge of the facts,

(3) the person to whom it is made must have been ignorant of the truth concerning the matter,

(4) it must have been made with the intention that the innocent party should act upon it,

(5) he must have been induced by the false representation to act upon it.

*Miller v. First State Bank*, 551 S.W.2d 89, 101 (Tex.Civ.App.—Fort Worth 1977), *aff'd as modified*, 563 S.W.2d 572 (Tex.1978), *citing Ellis v. Cleavinger*, 298 S.W.2d 193, 194 (Tex.Civ.App.—Amarillo 1957, no writ). Only when a borrowing party deceives the lender could the lender argue estoppel as a defense to a claim of usury. *See Miro v. Allied Finance Co.*, 650 S.W.2d 938, 944 (Tex.App.—Houston [14th Dist.] 1983, no writ); *American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d 578, 583–84 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). As there is no evidence that Cook was deceived by the Fraziers, his fourth point of error is overruled.

In his fifth point of error, Cook contends the Fraziers' claim is barred by the four-year statute of limitations for usury actions. Cook asserts that the interest *actually paid* did not exceed 11.62% under the Arkansas contract or 16.33% under the Utah contract. He takes the position that

because this interest did not exceed the legal limit, no usurious interest was ever received or collected. Because it was never collected, the Fraziers' claim must be based upon the accrual of the interest, as a business deduction. He then argues that the business interest deductions were taken more than four years prior to the filing of this action on June 11, 1987. We are not persuaded by this interpretation of the law. We also note the facts Cook relies upon here—the percentage of interest actually paid and the years the interest was deducted by the Fraziers, are not in the record before us.

The fact that the Fraziers deducted the accrued interest from their federal income tax is irrelevant. Their claim is not based, as Cook suggests, upon the accrual of interest, but upon statutory law providing that it is usury to contract for, charge or receive interest in excess of the legal limit. TEX.REV.CIV.STAT.ANN. art. 5069-1.-06(1) (Vernon 1987). The triggering factor is the collection or receipt of the usurious interest. The statute of limitations for usury provides:

> All such actions brought under this Article shall be brought in any court of this State having jurisdiction thereof within four years from the date when the usurious charge was received or collected....

*Id.*, art. 5069-1.06(3).

Cook suggests that the statute of limitations should be construed to require that the *payment* of interest must itself be of an amount in excess of the legal limit in order to trigger the statute. We disagree. Such interest is by definition usurious if it exceeds the legal limit. The fact that the full amount of interest the borrower is liable for under the terms of the contract has not been paid does not negate the usurious nature of the interest contracted for and charged. *Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260, 260–61 (Tex.1977). The interest was usurious when it was received, regardless of its amount. The payment of interest under a usurious contract triggers the limitations period, regardless of the amount of the interest payment.

Whether the interest paid need be in excess of the legal limit is, however, of no consequence in this case. If Cook were correct in his assertion that the interest collected must be in excess of the legal limit and the Fraziers' payment was below the ceiling, the statutory limitations period has not begun to run. If the limitations period runs from the date the interest was received, it had not expired when the Fraziers filed suit. The final interest payment was made on July 30, 1984. Suit was filed on June 11, 1987. Cook's final point of error is overruled.

Point of error one is sustained with respect to the Utah contract and overruled with respect to the Arkansas contract. Points two through five are overruled and cross-point one is sustained. Accordingly, we reverse the judgment of the trial court and remand this case for proceedings not inconsistent with this decision.