**Raymond E. LEE and Lee Towing Company, Inc., Appellants,**

v.

**SABINE BANK, Appellee.**

**No. 09 85 016 CV.**

Court of Appeals of Texas, Beaumont.

April 17, 1986.

Rehearing Denied May 7, 1986.

Jon B. Burmeister, Moore, Landry, Garth & Jones, Beaumont, for appellants.

James M. Black, Black & Black, Port Arthur, for appellee.

## OPINION

DIES, Chief Justice.

Raymond E. Lee and Lee Towing Company, Inc., as plaintiffs below, sued Sabine Bank, as defendant below, alleging that plaintiff (for simplicity, the singular will be used and the parties referred to herein as they were below) financed a pushboat with the defendant and transferred as security therefor a first preferred maritime mortgage on the vessel, together with an assignment to defendant of three life insurance policies. That the parties agreed at the time of the loan transaction the assignment of the life insurance policies was only to assure the bank examiners, but that there would never be a foreclosure on these policies. That defendant had purchased the vessel at a marshal's sale in Baton Rouge, Louisiana, for the nonpayment of fuel[1] "but now is attempting to cash in the insurance policies and apply the cash surrender values to the indebtedness in question."

Defendant bank answered and counterclaimed for the amount it alleged plaintiff still owed on the indebtedness. Trial was to the court without a jury, which resulted in a judgment for the defendant in the amount of $240,854.05, together with interest. It is from this judgment plaintiff has perfected appeal to this court.

Plaintiff has a sole point of error, which follows:

"The trial court abused its discretion by calculating the value of a vessel at its purchase price rather than its market value at the time of a federal marshal's sale, in determining the amount of deficiency remaining on a preferred maritime mortgage, when the purchaser of the vessel at said sale was itself the preferred mortgage owner."

The arithmetics in this loan transaction are as follows: Plaintiff borrowed $500,000 from defendant, $450,000 of which was used to purchase the vessel (a new one), and $50,000 to be used as working capital.

1. The evidence reveals this nonpayment was by a lessee of the vessel from plaintiff.

As security or collateral for the loan, he gave defendant bank a mortgage on the vessel and assigned the insurance policies previously alluded to. The principal balance on the note when the defendant purchased the boat at forced sale was $404,000. Defendant purchased the boat at the judicial sale for $175,000 which, after the payment of fees involved, came to $155,669. The value of the life insurance applied against plaintiff's note was $62,228. Legal expenses to defendant in Louisiana were $3,600. Interest on the note was $36,387. Therefore, defendant's president testified at time of trial (in addition to the figures we have set out above) the amount due and unpaid on the note was $226,064. The interest after delinquency was 10 per cent. The judgment also awarded defendant $5,000 in attorneys' fees. At the time of the trial, defendant was carrying the vessel on its books at a value of $380,000.

An interesting and parallel case on the facts to the case at bar is *Walter E. Heller and Co. v. O/S SONNY V.*, 595 F.2d 968 (5th Cir.1979). There, a lender foreclosed on a preferred ship's mortgage, purchased the vessel at a judicial sale, and then took a deficiency judgment against the borrower on the promissory note executed by borrower to lender, the same fact situation we have in the case at bar. "The appellants [borrower] protest that the trial court erred in measuring the offset by the sale price rather than by the fair market value of the ship." (*Id.* at 969.)

In applying federal law to the case, the court wrote (at 972):

"*Deficiency judgment suits should not be turned into valuation cases absent at least a preliminary showing of a probable significant disparity between the sales price of the property and its fair value.* Without such a showing, to grant a fair value offset in cases under the Ship Mortgage Act would upset the Congressional design of just and speedy enforcement of mortgagees' rights." (emphasis supplied)

The vessel was sold for $35,000 to plaintiff-appellee [lender].

"*That Heller, and not a third party, purchased the vessel at the ... sale should alone have triggered the need for scrutiny by the district court....*" (emphasis supplied)

(*Id.*) An affidavit by a marine consulting firm, appraising the value of the vessel at $118,000, had been submitted to the court. And, Heller (lender) resold the vessel for $52,000, "a price almost 50 percent greater than the judicial sale price." (*Id.*) The court, inter alia, held:

"Given the substantial disparity between the sale price and the ... appraisal, and between the sale price and the resale price, we think that the district court abused its discretion in not permitting the defendants to pursue an offset *measured by the fair value of the vessel as opposed to the foreclosure sale price.*" (emphasis supplied)

(*Id.*) *See also Bollinger & Boyd v. Motor Vessel, Captain Claud Bass*, 576 F.2d 595 (5th Cir.1978).

We are persuaded that the rule of the *Heller* case, *supra*, is fair and reasonable, and should be applied in Texas law. But we know of no reason why it should be restricted to ships. A lender who has secured collateral, whether personalty or realty is under a trust arrangement with the borrower, in the event of foreclosure, to make an honest effort to reduce the loan as much as possible by securing a fair price for the collateral. *See generally* 39 TEX. JUR.2d, *Mortgages and Trust Deeds* secs. 154 and 156 (Rev. ed. 1976). So far as we can determine, our Texas Supreme Court has never spoken precisely on this subject. We do, however, find this language in 39 TEX.JUR.2d, *Mortgages and Trust Deeds* sec. 191, at 247 (Rev. ed. 1976):

"The mere inadequacy of price paid for the property sold at a foreclosure sale is not sufficient to justify refusal to confirm the sale or to set it aside, unless that fact is supplemented by proof of bad faith, mistake, or undue advantage taken of the ignorance or weakness of those whose property rights are affected by the sale. However, a sale may be set

aside as to the purchaser who stifled competition among bidders at the sale with a view to obtaining the property for a grossly inadequate consideration. Although the insanity of the grantor alone is not generally considered sufficient to justify setting aside a sale made under a deed of trust, the grantor's insanity coupled with the grossly inadequate price paid for the property may warrant the setting aside of the sale, particularly where the purchase unjustly took advantage of the mortgagor's unfortunate condition.

"Whether or not a sale should be set aside by reason of accident, mistake, or any other circumstance that reasonably tended to cause the property to be sold for an inadequate price is a question to be determined by the court. However, the question of adequacy of the price paid is an issue of fact to be passed on by the trier of fact.

"Under the doctrine of res judicata, the price realized by a foreclosure sale is binding on the defendant in the suit as the fair market value of the property, in the absence of appropriate proceedings instituted by him to set aside the sale on the score of gross inadequacy or other equitable grounds. But no rule of law or equity extends the operation of that principle so as to make it equally applicable to a stranger to the foreclosure suit, who is a subsequent purchaser of a portion of the mortgaged property, and who is entitled to his day in court before he can be judicially deprived of his property rights.

"The fact that a mortgagee became the purchaser at the foreclosure sale under his mortgage, crediting the amount of his bid to the mortgage debt and paying nothing in addition, does not affect his standing as a purchaser for value under the foreclosure sale."

No Texas Supreme Court case is cited. ▪ We, therefore, hold that when a lender or its surrogate purchases collateral to secure a loan given by a borrower, and where there is a probable significant disparity between the sales price of the property and its fair market value, the borrower may contest the sale and present evidence contending such.

▪ In the case at bar, we have almost no real evidence of the fair market value of the vessel. But neither did the borrower and mortgagor of the vessel present any evidence of its fair market value at the time of the judicial sale. We, therefore, overrule plaintiff-appellant's point of error, and affirm the judgment of the trial court.

Affirmed.