**OLNEY SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**FARMERS MARKET OF ODESSA, INC., et al., Appellees.**

No. 08–88–00113–CV.

Court of Appeals of Texas, El Paso.

Jan. 25, 1989.

Rehearing Denied Feb. 22, 1989.

Joseph P. Horlen, Byran, Martin S. Wozniak, Boyd, Sanders, Wade, Cropper & Prothro, P.C., Midland, for appellant.

Roger Jatko, Roy L. Bell, Bell & Jatko, Randall L. Rouse, Shafer, Gilliland, Davis, McCollum & Ashley, Odessa, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

Home Savings Association sued to recover on a deficiency judgment after a non-judicial foreclosure. The jury denied all relief and instead found in favor of the claimed individual guarantors on their cross-action, including a total award of $350,000.00 as exemplary damages. We reverse.

Appellant Olney Savings and Loan Association is the ultimate successor to Home Savings Association (Home). Farmers Market of Odessa, Inc. (Farmers Market), executed a promissory note to Home and secured it with a deed of trust on certain property. Appellee, Lawyers Title Agency of Odessa, Inc. (Lawyers Title), prepared the closing papers on the loan at the request of Home. Appellee Roy R. Taylor was president of Farmers Market at the time of the loan. A corporate guaranty agreement was executed by Appellees Roy R. Taylor (Taylor) and Nora L. Patterson (Patterson).

Farmers Market defaulted on its note, resulting in a non-judicial foreclosure sale in which Home bought the property at the sale. Home then filed this suit against Farmers Market and Taylor and Patterson seeking a deficiency judgment. We are concerned primarily with the suit against Appellees Taylor and Patterson. Taylor and Patterson filed a cross-action against Home, alleging that the corporate guaranty agreement executed by them had been forged or altered after the time of the loan closing to create an individual guaranty. They contended that Home willfully, fraudulently and in bad faith converted the corporate guaranty into an individual guaranty, then filed suit on the forged/altered instrument which damaged their credit and reputation and caused mental anguish. Appellees sought actual damages as well as punitive damages. Home, in its trial pleadings, asserted that the parties had agreed before the preparation of the written guaranty agreement that Taylor and Patterson would individually guarantee the debt of Farmers Market and asked for reformation relief. The jury found against Home by returning a verdict that found no deficiency existed. Home was also denied recovery for the amount of costs, expenses or attorney's fees it requested for its attempt to enforce its rights under the note and deed of trust from Farmers Market to Home. The jury found that Home had altered the guaranty without the consent of Taylor and Patterson, and that Home knew or should have known the guaranty had been altered at the time the lawsuit was filed. The jury found Home acted in bad faith in filing the suit against Taylor and Patterson. Taylor and Patterson were awarded $25,000.00 each for damages suffered to their credit standing and reputation, as well as mental anguish. In addition, each was awarded $175,000.00 as exemplary damages. The trial court entered judgment in conformance with the jury verdict, and the trial court also overruled the Appellant's motion for new trial.

Point of Error No. One asserts that the trial court erred in refusing to rule on Home's special exceptions to the third amended original answer of Farmers Market, Taylor and Patterson and the second amended cross-claim of Taylor and Patterson.

Home, in its brief, states that this point of error is extremely narrow, "[w]hether Special Exceptions brought to the attention of the Judge in the Trial Court before the instruction or charge to the jury are timely."

■ The special exceptions are not properly before us because there is no showing of filing with the district clerk. Appellant attempts to transfer its filing obligation to the trial judge. The trial judge does not

have to accept the filing of papers, although he may permit it under Tex.R. Civ.P. 74. There is no record before us other than at the close of evidence, while preparing to submit the charge to the jury, the Appellant attempted to obtain a ruling on its unfiled exceptions. The trial judge at that time advised Appellant that they had not requested a hearing, and that the exceptions were not timely. Furthermore, Appellant had made an unequivocal announcement of "ready" for trial. The record exhibiting the lack of evidence of filing of the exceptions and showing an affirmative announcement of "ready" without requesting a ruling constitutes a waiver of any possible error by the Appellant. 3 R. McDonald, Texas Civil Practice, sec. 10.14.1–C (rev. 1983). Point of Error No. One is overruled.

Appellant's Points of Error Nos. Two through Eight concern the allowance by the trial court of evidence concerning the sale of the property after foreclosure.

## THE DEFICIENCY

■■■ Appellees did not question the power or right to foreclose, and therefore did not seek to set aside the sale, but based their action on the actions of Home in asserting a deficiency. Evidence was allowed over objection concerning the fact that shortly before the foreclosure sale date, Home had an appraisal made on the property that placed the value at $200,-000.00. Home's bid at foreclosure was $150,000.00, and Home found a buyer for the property within eight days thereafter for $200,000.00. Appellant used its bid price of $150,000.00 in order to determine the deficiency. Appellant Home, in its trial pleadings, alleged the $150,000.00 was a "fair and reasonable" value for the property and, therefore, assumes that burden of proof. Home's bid of $150,000.00 represented 75 percent of the appraised value as well as 75 percent of the actual value obtained from a buyer after foreclosure. The Appellees denied that the $150,000.00 was fair and reasonable and were entitled to produce evidence surrounding the sale to attempt to show what was a fair and reasonable price. Since Home was under a trust arrangement with the borrower, it must, in the event of foreclosure, make an honest effort to reduce the loan as much as possible by securing a fair price for the collateral. *Lee v. Sabine Bank,* 708 S.W. 2d 582 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.); *Heller and Company v. O/S Sonny V.,* 595 F.2d 968 (5th Cir.1979). The evidence raised a fact issue for the jury to decide. The evidence was also admissible due to the claims by Appellees Taylor and Patterson of bad faith, fraud and intentional infliction of mental anguish by Home. The allegations of Appellees raised a question as to the motivation, beliefs and good faith of Home as shown by the entire facts surrounding the loan, guaranty and foreclosure, including the ultimate disposition of the property. While the evidence of the entire transaction was admissible, we find that the issues were improperly submitted.

We suggest on retrial of this case, depending on whether evidence is produced that supports an issue, that the jury be asked to determine if the bid price at foreclosure was fair and reasonable. In the event of an answer of "yes", a follow-up issue would be asked to determine the amount of deficiency. If the jury answers that the bid price was not fair and reasonable, the follow-up issue would ask the jury to determine what would be a fair and reasonable price. The amount of the deficiency, if any, then should be asked.

Points of Error Nos. Two through Eight are overruled insofar as the claimed inadmissibility of the pre and post foreclosure values of the property.

## REFORMATION

■■■ The Appellant Home pled for reformation, alleging that the parties orally agreed that Appellees Taylor and Patterson would execute a written guaranty making themselves individually liable for the debt of Farmers Market. Home produced evidence that such agreement was made before the written guaranty was prepared. When the written guaranty was prepared, Appellee Farmers Market was shown as guaranteeing the debt of Taylor and Pat-

terson instead of vice-versa. Home alleged that the error was not discovered until after litigation, and pled that the guaranty be reformed to show the true intent of the parties. Appellees denied there was any such oral agreement, thereby creating a fact issue for the jury to determine. The trial court erred in not submitting reformation issues to the jury. The proper issues that should have been submitted in regard to reformation are set forth in *Cherokee Water Company v. Forderhause*, 741 S.W. 2d 377, 379 (Tex.1987). In the event that the jury determines the reformation issues in favor of Appellant, the Appellees' cross-action for damages arising from the altered guaranty suffers a fatal blow. The controversy over the deficiency would be present.

We sustain those points of error pertaining to the failure of the trial court to submit issues as to reformation.

## THE CROSS–ACTION

Appellant's Points of Error Nos. Nine through Eighteen have been lumped together for discussion making it difficult for the court to segregate, but basically the Appellant attacks the cross-action of Appellees Taylor and Patterson as being without foundation in law or fact and complaining about damages being excessive.

■ Appellees Taylor and Patterson alleged that Appellant Home had forged or altered the guaranty agreement without their knowledge or consent, and that Home knew or should have known of the change when Home filed suit, and that the filing of suit was in bad faith, resulting in damage to their credit and reputation and causing mental anguish. Appellees also produced evidence that would entitle a jury to believe that after Home, with knowledge of the forgery or alteration of the written guaranty, thereafter deliberately turned Appellees Taylor and Patterson into the credit bureau, resulting in damage to their personal as well as business reputation. The allegations of fraud, forgery, willfulness and bad faith stated a cause of action for damages. The evidence produced justified submitting the case to the jury and the damages

awarded. Points of Error Nos. Nine through Eighteen are overruled.

## APPELLEE LAWYERS TITLE

■ Point of Error No. Nineteen asserts the trial court erred in granting the motion of Appellee Lawyers Title for a directed verdict based on Appellant's action being barred by limitations.

Appellant Home brought Lawyers Title into the lawsuit claiming misrepresentation, fraud, breach of fiduciary duty, breach of a duty of good faith, breach of contract and for negligence. This action was filed on March 19, 1987. Lawyers Title completed preparation of the closing papers for the loan on July 29, 1983, using a corporate guaranty form furnished by Appellant Home. Evidence at trial showed that Home had an employee, whose duty it was as closing agent for Home, to review all the documents. Home approved the completed guaranty form on July 29, 1983, and testimony was that the guaranty was checked. Testimony was that the guaranty was unaltered at the time of delivery to Home by Lawyers Title. Any acts by Lawyers Title had been completed on July 29, 1983. The trial court granted the motion of Appellee Lawyers Title for directed verdict on the basis that Home's action was barred by limitations. We agree. The right of Appellant Home to bring suit against Appellee Lawyers Title accrued on July 29, 1983, the date the alleged negligence occurred. Even if the discovery rule applied, the evidence supports a finding that Home discovered or should have reasonably discovered the error as early as July 29, 1983. *Sutherland v. Caballero*, 750 S.W.2d 840 (Tex.Civ.App.—El Paso 1988, writ denied); *Willis v. Maverick*, 760 S.W.2d 642 (Tex.1988).

Point of Error No. Nineteen is overruled.

Appellees Taylor and Patterson, by cross-point, seek damages under Tex.R. App.P. 84, but in view of the disposition of this case by this court, the cross-point is overruled.

The judgment of the trial court is reversed, and the case is remanded for a new trial consistent with this opinion.

OSBORN, Chief Justice, concurring.

I concur. The case must be reversed because of the failure to submit the reformation issues.

I write further because of my question about the deficiency issue. In Appellee's brief, counsel says: "Farmers did not contest the sale as void." My recollection of counsel's contention on oral argument was that the sale was valid. If the sale is considered valid, and upon retrial no attempt is made to attack the validity of the sale, then Appellee should only receive a credit for the amount of the highest bid at the foreclosure sale. If there is no attack on the validity of the sale, it should be presumed to be valid and there is no burden on the lender to establish that its bid price was fair and reasonable. Where the sale is not attacked, the deficiency, if any, must be established at the time of the foreclosure sale. Neither the lender nor the debtor should be required nor permitted to wait until the property is sold by the lender, whether it be one week or one year later to determine if a deficiency exists or whether the debtor may be entitled to a credit.

The general rule is set forth in the annotation: "Accountability of mortgagee or pledgee for profit made upon resale of the property after purchase thereof at foreclosure or other enforcement sale." 117 A.L.R. 863 (1938). The annotation says:

> The cases are agreed that where no fraud or other irregularity is shown in connection with the foreclosure or the conduct of the foreclosure sale, a mortgagor has no right to compel a mortgagee to account for any profit made by him upon a resale of the premises after purchasing the same at a sale under the foreclosure of his mortgage.

The cases in the annotation note that the lender who purchases at a foreclosure occupies the same position as a third party purchaser. If a third party had been the highest bidder and then sold the property a week later at a $50,000.00 profit, the debtor certainly could not claim that amount as a credit on any deficiency. A purchaser at foreclosure is entitled to sell at a profit if he can do so. *Third National Bank in Nashville v. McCord*, 688 S.W.2d 446 (Tenn.App.1985). That rule should apply uniformly whether the purchaser be the lender or a third party.

Therefore, I would hold that if Farmers Market does not attack the sale and get findings which support setting aside the foreclosure sale, then the lender has no duty to get findings that the amount of its bid was fair and reasonable, and the credit on the debt will, as a matter of law, be the amount bid at the sale. The rule seems to be clear that to set aside a foreclosure sale, there must be a finding of more than just inadequacy of consideration. There must be evidence of irregularity, though slight, which caused or contributed to cause the property to be sold for a grossly inadequate price. *American Savings and Loan Association of Houston v. Musick*, 531 S.W.2d 581 (Tex.1975), *Jinkins v. Chambers*, 622 S.W.2d 614 (Tex.App.—Tyler 1981, no writ); *Donaldson v. Mansel*, 615 S.W.2d 799 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). If the sale was valid, the amount bid at the foreclosure sale was the proper amount to credit on the borrower's debt. *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (1942); *Whalen v. Etheridge*, 428 S.W.2d 824 (Tex. Civ.App.—San Antonio 1968, writ ref'd n.r. e.).

Obviously, the ultimate disposition of this issue will depend upon the pleadings and the evidence upon a retrial.

WOODARD, J., concurring.