**GEORGETOWN ASSOCIATES, LTD., ARP Georgetown, Inc., and Aron B. Katz, Appellant,**

v.

**HOME FEDERAL SAVINGS & LOAN ASSOCIATION, Appellee.**

No. A14–89–961–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 2, 1990.

Patrick F. McManemin, Donna R. Morris, Dallas, for appellant.

Kevin F. Risley, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

MURPHY, Justice.

■ When plaintiff sued three defendants—one on a guaranty agreement and two for reimbursement of ad valorem taxes—the defendants counterclaimed on various grounds. The trial court rendered a summary judgment for plaintiff in an instrument which never mentioned the counterclaims as such but concluded, "All relief not expressly granted herein is denied." We must decide whether the court disposed of those counterclaims, because a failure to rule on them would make the judgment interlocutory and deprive us of jurisdiction over this appeal. For reasons that follow, we hold that the court did dispose of the counterclaims, albeit in error, and that the appeal is properly here.

■ With respect to jurisdiction we need not go any further than the face of the judgment. It recites those words of finality which the supreme court has long implored trial judges to include in their judgments. *See e.g., Teer v. Duddlesten,* 664 S.W.2d 702, 704 (Tex.1982); *North East Indep. School Dist. v. Aldridge,* 400 S.W.2d 893, 898 (Tex.1966). No matter

that there was error in so doing, a crucial point remains: the trial court had the *power* to rule on all claims, and that is precisely what it did. Accordingly, the judgment was final and appealable. Of course, that part of the judgment which disposed of the counterclaims was erroneous. Because plaintiff had not moved for a summary judgment on those grounds, no predicate existed for a peremptory ruling. *Hodde v. Young,* 672 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *see* TEX.R.CIV.P. 166a. Those claims should be addressed by the trial court on remand. The first point of error is sustained.

■ The remainder of the appeal has only to do with the affirmative claims brought by plaintiff. Those claims arise from a promissory note, a deed of trust, and a guaranty agreement (the Guaranty). Plaintiff is a savings and loan association which foreclosed on certain real estate pursuant to those documents. Defendant Georgetown is a Texas limited partnership, and defendant ARP is a general partner of Georgetown. When Georgetown executed a promissory note in plaintiff's favor, secured by a deed of trust, Defendant Katz guaranteed Georgetown's indebtedness up to $500,000. One of the problems with these written instruments is that although each contains a choice-of-law clause, they do not each select the *same* governing law. For example, the deed of trust calls for use of Texas law, whereas the note calls for use of California law. The Guaranty upon which plaintiff seeks to hold Katz liable, on the other hand, calls for use of Texas law.

The relevance of this dispute becomes obvious when one reads § 580d of the California Code of Civil Procedure, because that statute restricts the availability of a deficiency judgment. In our view California law does not apply. We reach this conclusion by two routes. First, the Guaranty on its face selects Texas law, and that choice should be respected. A plaintiff is entitled to sue on whatever obligation it chooses—here, the Guaranty. Second, and alternatively, the choice-of-law clauses are in irreconcilable conflict (for our pur-

poses [1]). Texas law would certainly apply in a case where there had been no choice of law at all. It is reasonable to regard a pair of contradictory choice-of-law provisions as the equivalent of no choice-of-law clause. Application of Texas law is justifiable on either of the bases identified here. We overrule the second point of error.

◼ Next it is argued there are fact issues over the amount of the deficiency. That may well be so, but because the evidence establishes a deficiency of over $500,000, Katz is nevertheless liable for that amount. What matters for summary judgment purposes is the liability for the guaranteed sum, not the excess over it. Any factual dispute over the amount beyond $500,000 may be perfectly "genuine" yet not "material" within the meaning of TEX.R.CIV.P. 166a. We overrule the third point of error.

◼ In a related vein the defendants assail the amount paid at the foreclosure sale as grossly inadequate. They aver the existence of fact issues over that amount's adequacy. Before examining the proof, we turn to the relevant caselaw. In support of the sale's validity the plaintiff relies chiefly on *American Savings & Loan v. Musick*, 531 S.W.2d 581, 587 (Tex.1975). That case holds that mere inadequacy of price will not invalidate a foreclosure sale; rather, there must be evidence of some irregularity which "caused or contributed to cause the property to be sold for a grossly inadequate price." *Id.; see also Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.1965) ("Mere inadequacy of consideration alone does not render a foreclosure sale void if the sale was legally and fairly made."); *Donaldson v. Mansel*, 615 S.W.2d 799, 802 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (same). Armed with these citations plaintiff points to the Substitute Trustee's Deed and its recitals of regularity as prima facie proof in support of the summary judgment. *See Merit Homes, Inc. v. Alltex Mtge. Co.* 402

S.W.2d 943, 946 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.) (such unrebutted evidence supports summary judgment).

By way of counterargument the defendants offer their own body of jurisprudence. *Olney Sav. & Loan Ass'n v. Farmers' Mkt. of Odessa, Inc.*, 764 S.W.2d 869 (Tex.App.—El Paso 1989, no writ); *Halter v. Allied Merchant's Bank*, 751 S.W.2d 286 (Tex.App.—Beaumont 1988, writ denied); *Lee v. Sabine Bank*, 708 S.W.2d 582 (Tex. App.—Beaumont 1986, writ ref'd n.r.e.). These decisions are said to show a jury issue exists when property is appraised at one amount but purchased for considerably less at the foreclosure and then sold again for a considerable profit. True, they *seem* to stand for that proposition, but upon closer scrutiny we find they add up to remarkably little. The *Olney* case has no precedential value for our purposes, because there is no *ratio decidendi*, no holding for the court. Justice Fuller's lead opinion for the three member panel announced the principle contended for but procured no votes. Chief Justice Osborn concurred in the judgment with a separate opinion, which restated the orthodox view expressed in cases such as *Musick*. Justice Woodard joined neither opinion and simply noted his concurrence in the result. What seemed to be a holding therefore turns out to be no more than a headnote. The apparent value of this citation having evaporated, then, we turn to the two opinions of the Beaumont court.

In *Halter* the Beaumont court pays homage to the supreme court's *Musick* opinion but summarily brushes it aside in favor of Beaumont's own decision in *Lee*, a case which involved a foreclosure on a pushboat. The *Lee* opinion cites no Texas case—not one—but analogizes to a Fifth Circuit holding under the federal Ship Mortgage Act. *Heller & Co. v. O/S Sonny V.*, 595 F.2d 968 (5th Cir.1979). The Beaumont court proceeds to applaud the Fifth Circuit's ex-

---

**1.** We recognize the theoretical possibility of what the writers call depecage, where the parties might select several forum's laws for different purposes. For example, F–1 law would apply to issues of duty, F–2 law to issues of damages, F–3 to limitations, and so on. We express no opinion on the existence or validity of such an approach here. We hold only that the choice-of-law clauses are contradictory *within the context of a deficiency judgment.*

position of federal maritime law as "fair and reasonable," and observes, "we know of no reason why it should be restricted to ships." 708 S.W.2d at 584. Admiralty law in hand, the court rolls out the ultimate authority: an article in 39 Tex.Jur.2d, *Mortgages and Trust Deeds*. After a five paragraph block quote, *Lee* dramatically concludes, "No Texas Supreme Court case is cited." The opinion then makes the following bold assertion, described as holding but arguably dictum when applied to anything on dry land:

> We, therefore, hold that when a lender or its surrogate purchases collateral to secure a loan given by a borrower, and where there is a probable significant disparity between the sales price of the property and its fair market value, the borrower may contest the sale and present evidence contending such.

708 S.W.2d at 585. Remarkably, the court fails to make the slightest use of its brave new rule because, as it happened, no one had presented any evidence of the vessel's fair market value, and the summary judgment was upheld after all. *See id.* To put matters succinctly, we are unmoved by these authorities. We choose instead to follow the supreme court's holding in *Musick* and therefore decline to follow *Lee* and *Halter.* (We would further give the same treatment to *Olney*, except that there is nothing in the *Olney* "opinion" to follow). The evidence before us indicates a purchase at 74% of the appraised value, 84% of the resale price, and nothing rebuts the prima facie proof of regularity at the foreclosure sale. The fourth point of error is overruled.[2]

■ Point of error five says fact issues exist over whether plaintiff breached (a) a duty of good faith and fair dealing, and (b) a fiduciary duty. It is somewhat difficult to deal neatly with these contentions, because they overlap with each other and with the previous point of error alleging the existence of fact issues over whether the sale price was too low. It is far from clear that the so-called duty of good faith even exists. The supreme court has expressly disavowed the duty as a general matter, with an exception for a "special relationship" between insurers and their insureds. *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983) (no such nebulous duty); *Arnold v. National Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987) (imposing the duty on insurers). We have adhered to that distinction and the reasoning behind it by keeping the insurance relationship special:

> If we were to recognize the employer-employee relationship as "special," that would be tantamount to putting every commercial contract under the umbrella of *Arnold:* vendor-purchaser, lessor-lessee, lender-borrower. Such an extension would undermine the very foundation of *Arnold* by denying that an insurance relationship is deserving of any special protection: it would in effect repudiate the Court's rationale to confuse the exceptional with the everyday.

*McClendon v. Ingersoll–Rand Co.*, 757 S.W.2d 816, 819–20 (Tex.App.—Houston [14th Dist.] 1988), *rev'd on other grounds*, 779 S.W.2d 69 (Tex.1989), *cert. granted*, — U.S. —, 110 S.Ct. 1804, 108 L.Ed.2d 935 (1990). We reaffirm our respect for that line today. Insurance relationships remain covered by the *Arnold* exception, and non-insurance relationships by *English.* Accordingly, there is no free-floating obligation of "good faith." The supreme court has recently applied this principle in the context of foreclosure. *See Federal Dep. Ins. Corp. v. Coleman*, 795 S.W.2d 706,

---

2. Our research indicates we are not the first to wonder about the *Lee* opinion. *See* Baggett, *Maturity of Debt and Real Property Foreclosures,* in State Bar of Texas, Debt Collection (1987), at G–136–37 ("Apparently the fact that the foreclosure was pursuant to the federal Ship Mortgage Act confused the court.... The long line of cases requiring an irregularity causing grossly inadequate consideration may not have been argued; or, the court may have reasoned that foreclosure under the Ship Mortgage Act would be governed by a different standard.... In any event, the clear Texas authority indicates that mere inadequacy of consideration alone will not invalidate an otherwise proper foreclosure.") (citing *Musick* ); *see also* Locke & Novak, *Texas Foreclosure Manual,* in State Bar of Texas, 2 Advanced Real Estate Law (1988), at Z–135–36 (also viewing *Lee* as aberrant).

708 (Tex.1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith."). But this is a far cry from giving carte blanche to the mortgagee. Texas law does impose a duty on him, namely to conduct the sale properly. *See Biddle v. National Old Line Ins. Co.*, 513 S.W.2d 135, 138 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). This requirement of regularity is a structural protection for the mortgagor. By demanding a fair *process*, the law already does exactly what we are being asked to do under the guise of inventing a new duty. In this litigation there was unrebutted proof of regularity, contained in the Substitute Trustee's Deed. Summary judgment was properly rendered. We overrule the fifth point of error.

Finally, we consider the liability for ad valorem taxes. The governing law is found in a pair of supreme court cases. *Wood v. Miller*, 597 S.W.2d 332 (Tex.1980); *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333 (Tex.1980). Handed down the same day, these opinions deal with the precise legal question before us, although on slightly different facts in that the contractual language there was not identical to the language in this case. *Smart* and *Wood* say a mortgagor is not personally liable to a mortgagee for reimbursement of property taxes when the note creates a non-recourse debt and the deed of trust, although making tax payment mandatory, treats that obligation as part of the mortgage debt. For example, in *Wood* the deeds of trust provided that the mortgagor's tax liability should "become part of the debt hereby secured." *See* 597 S.W.2d at 333. But "the debt" was a nonpersonal obligation. The court concluded that in light of this language and in the absence of a "clear promise" of personal reimbursement, the remedy for recovery of delinquent taxes was foreclosure against the property. *Id.*

*Smart* is similar. There the note was also non-recourse. The deed of trust said taxes "shall be payable," but added, "in like manner with the other indebtedness herein mentioned. . . ." That other indebtedness was naturally the note, which the

deed of trust emphasized was non-recourse. A unanimous court found no contractual basis for personal liability. 597 S.W.2d at 337.

Applying these principles to the case at bar, we find a non-recourse note as well as a deed of trust which requires payment of property taxes. Here the note states:

> In addition to the Deed of Trust, this Note is secured by the personal Guaranty of Payment and Performance. . . . Except as provided in the Guaranty, Borrower *will not be personally liable for any amounts payable under this Note*, and Lender will only rely on the security to satisfy this Note.

(Emphasis added). The deed of trust provides for payment of ad valorem taxes:

> If Borrower fails to pay any such taxes and assessments, including, without limitation, taxes in lieu of ad valorem taxes and taxes against this deed of trust and the Indebtedness secured hereby, Lender may pay the same, together with all costs and penalties thereon, at Borrower's expense. . . .

In addition, the deed of trust defines the debt in its first two sentences:

> This Deed of Trust shall secure, in addition to the Note, all funds hereafter advanced by Lender to or for the benefit of Borrower, as contemplated by any covenant or provision herein contained or for any other purpose, contemplated hereby. All of the foregoing, including all amounts payable under the Note, is collectively "Indebtedness."

In support of the judgment for ad valorem taxes it is argued that the phrase "at Borrower's expense" means what it says, and that the deed of trust thereby creates an independent obligation having nothing to do with the non-recourse note. Although the question is a close one, we cannot agree. The supreme court has said a "clear promise" is needed, and the language appearing above is cloudier than it is clear. If this dragnet clause was meant to preserve the right to reimbursement for delinquent property taxes, it surely said so

in obscure terms. The sixth point of error is sustained.

We affirm that part of the judgment finding liability on the Guaranty as to appellant Katz but reverse and remand the part which disposed of his counterclaims, and we modify the portion awarding reimbursement from Georgetown and ARP for property taxes so as to provide a take nothing judgment on those claims.