Opinion issued June 29, 2006 
     










In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-04-00626-CV
____________

SATURN CAPITAL CORPORATION, H.F. CAPITAL CORPORATION,
AND ALFRED J. ANTONINI, INDIVIDUALLY AND AS TRUSTEE,
Appellants

V.

LEE D. DORSEY III, AS TRUSTEE OF THE DORSEY LOVING TRUST
FUND, AND LEE CARROLL, TRUSTEE, Appellees




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 0255491




MEMORANDUM OPINION

          Appellants, Saturn Capital Corporation (“Saturn”), H.F. Capital Corporation,
and Alfred J. Antonini (collectively, “the Saturn parties”), appeal from a take-nothing
summary judgment rendered on their usury claim against appellees, Lee D. Dorsey III,
as Trustee of the Dorsey Loving Trust Fund, and Lee Carroll, trustee (collectively,
“the Dorsey parties”). We determine (1) whether the parties contracted for the
application of Texas or Oregon law to claims such as the Saturn parties’ usury claim
and (2) whether the parties’ choice of law, whatever it might be, is valid. We affirm.
Background
          Saturn was a Texas corporation. Antonini, a resident of California, owned
Saturn. In 1991, Antonini executed a $1,675,000 promissory note (“the 1991 note”),
on behalf of Saturn as maker; a Texas company called DCHO, Inc. was the payee. The
1991 note recited that it had “been delivered at and made in Houston, Texas”;
provided that it was to be interpreted under the laws of Texas; expressly incorporated
the maximum non-usurious rate provided by Texas law; and expressed Antonini’s
consent to the jurisdiction of the courts of Harris County, Texas.
          The 1991 promissory note was secured by a deed of trust (“the 1991 deed of
trust”), which covered real property located in Texas. The 1991 deed of trust provided
that it was “executed and delivered in” Texas and that it and the 1991 note were issued
in Texas and were to be construed in accordance with, and governed by, Texas law.
          Some time later, Saturn sought to borrow $250,000. The Dorsey Loving Trust
Fund, whose trustee’s (Lee D. Dorsey III) principal place of business was in Oregon,
agreed in 2001 to lend that sum to Saturn and Antonini under a promissory note (“the
2001 note”). The 2001 note was secured by Saturn’s assignment, to the Dorsey
Loving Trust Fund, of its rights under the 1991 note, which was in turn secured by the
1991 deed of trust.
          The Dorsey Loving Trust Fund drafted the 2001 loan documents, presumably
in Oregon, and sent them to Antonini’s cousin, Saturn’s vice-president, who then
signed them in California. The 2001 note expressly referred to the assignment of the
1991 deed of trust, which was escrowed at an Oregon title company. The 2001 note
was payable to an account in Oregon and provided:
IT IS FURTHER AGREED TO as part of this consideration being loaned
that this [2001 note] and Assignment of [the 1991 deed of trust] has been
executed and delivered in, and has been issued in, the County of
Josephine, State of Oregon, and each is to be construed in accordance
with and governed by the laws of the County of Josephine, State of
Oregon, and the laws of the United States of America, as applicable.
The parties initialed the above-quoted paragraph in the margin. Despite the parties’
contractual recitation that the 2001 note was executed in Oregon, the evidence, when
viewed in the light most favorable to the Saturn parties, shows that the Dorsey Loving
Trust Fund executed the 2001 loan documents and then delivered them to Saturn’s
vice-president in California, who signed them there.
          Saturn and Antonini defaulted on the 2001 note. In September 2002, the Dorsey
Loving Trust Fund made a demand for payment and then began foreclosure
proceedings. Appellee Lee Carroll, as substitute trustee, notified Saturn and Antonini
in October 2002 that a substitute trustee’s sale of the 1991 deed-of-trust property
would be held in November 2002.
          Before the substitute trustee’s sale took place, the Saturn parties sued the
Dorsey parties, seeking (1) a declaratory judgment that the Dorsey parties could not
foreclose upon the 1991 deed of trust because the applicable statute of limitations had
passed;


 (2) a declaratory judgment that the Dorsey parties “did not validly dispose of
the [1991] note securing [the Dorsey parties’ 2001] note and thus did not obtain good
title”; and (3) a temporary restraining order, temporary injunction, and permanent
injunction to prevent the Dorsey parties from conducting a trustee’s sale. The Saturn
parties later added a claim for usury—predicated entirely on the application of Texas
usury law—against the Dorsey parties and an alternative request for a declaration that
the Dorsey parties had taken the 1991 note in complete satisfaction of the 2001 note. 
The Dorsey parties counter-claimed, asserting causes of action for fraud and negligent
misrepresentation in the event that foreclosure of the Texas property under the 1991
deed of trust was barred. The Dorsey parties’ counter-claim theory was that, if the
1991 note and 1991 deed of trust were unenforceable, then the Saturn parties had
secured the 2001 note with worthless collateral.
          The Saturn parties moved for traditional summary judgment on the following
grounds: (1) the 1991 note and 1991 deed of trust were unenforceable because
limitations had run; (2) the 2001 note was usurious under Texas law, entitling the
Saturn parties to statutory damages; and (3) the Dorsey parties’ counter-claims failed
because the Dorsey parties were presumed to have known that Texas law barred
enforcement of the 1991 note and 1991 deed of trust when the Saturn parties assigned
them to the Dorsey parties. See Tex. R. Civ. P. 166a(c). As part of their usury
summary-judgment ground—which, pursuant to their motions and pleadings, required
the application of Texas law to prevail—the Saturn parties argued that the 2001 note’s
choice of Oregon law was ineffective either because (1) Oregon did not have a
reasonable relationship to the 2001 note or because (2) the 2001 note’s choice-of-law
clause (i) was ambiguous; (ii) contradicted the choice-of-law clauses in the 1991 note
and 1991 deed of trust, thus in effect constituting no choice of law; or (iii) violated
Texas’s public policy. The Saturn parties then asserted that, under Texas law, they
had proved usury as a matter of law.



          After the Saturn parties had moved for summary judgment, the Dorsey parties
non-suited their counter-claims for fraud and negligent misrepresentation, mooting the
Saturn parties’ summary-judgment ground attacking those counter-claims. The
Dorsey parties then moved for traditional, partial summary judgment on the ground
that Oregon law applied by virtue of the 2001 note’s choice-of-law clause and,
therefore, that the Saturn parties’ usury claim, which was predicated solely on Texas
law, failed as a matter of law. See Tex. R. Civ. P. 166a(c). 
          The trial court entered an interlocutory order expressly granting the Dorsey
parties’ motion for partial summary judgment, implicitly denying the Saturn parties’
motion for summary judgment on the ground of usury, and dismissing the Saturn
parties’ usury claim with prejudice. The interlocutory summary-judgment order was
made final by an agreed declaratory judgment declaring the 1991 note and 1991 deed
of trust unenforceable by virtue of the statute of limitations and denying all other
requested relief. The Saturn parties have appealed.
Standard of Review
          Summary judgment under rule 166a(c) is proper only when a movant establishes
that there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law. Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.
1995). A defendant is entitled to summary judgment if the evidence disproves as a
matter of law at least one element of each of the plaintiff’s causes of action or if it
conclusively establishes all elements of an affirmative defense. Id. In reviewing the
summary-judgment ruling, we indulge every reasonable inference in favor of the
non-movant, resolve any doubts in its favor, and take as true all evidence favorable to
it. Id.
          When both sides move for summary judgment and the trial court grants one
motion and denies the other, we can consider both motions, their evidence, and their
issues and may render the judgment that the trial court should have rendered. See CU
Lloyd’s of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998). When an order
granting summary judgment does not specify the grounds upon which the trial court
ruled, we must affirm the order to the extent that any of the summary judgment
grounds is meritorious. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex.
1995).
Choice of Law
          In their sole issue, the Saturn parties argue that the 2001 note “is subject to the
Texas usury statutes, thus subjecting [the Dorsey parties] to statutory penalties under
Texas usury laws.”
A.      The 2001 Note’s Choice-of-Law Provision Applies
          The Saturn parties attack the 2001 note’s choice of Oregon law on three
grounds: (1) the clause was inherently ambiguous because it called for the application
of the laws of Josephine County, Oregon (rather than the laws of “Oregon”), and there
were no laws passed by the Josephine County government that governed the
transaction; (2) the 2001 note contained no choice-of-forum clause to clarify the
inherent ambiguity of its choice-of-law clause; and, alternatively, (3) the 2001 note’s
choice-of-law clause was either ambiguous or ineffectual when considered with the
choice of Texas law contained in both the 1991 note and 1991 deed of trust.
          We reject the first argument. The choice of the law of Josephine County,
Oregon obviously meant the choice of Oregon law. Oregon state law would, of
course, generally apply in any county—such as Josephine County—within Oregon. 
Additionally, if, as the Saturn parties’ summary-judgment evidence showed, there
were no Josephine County laws applicable to the parties’ transaction, then the choice-of-law clause could have meant only the state’s law; that is, because it would be
unreasonable to do so, we do not deem the parties to have agreed to the application of
a non-existent county law. See Westwind Exploration, Inc. v. Homestate Sav. Ass’n,
696 S.W.2d 378, 382 (Tex. 1985) (“‘A reasonable interpretation [of an agreement] will
be preferred to one which is unreasonable.’”) (quoting Portland Gasoline Co. v.
Superior Mktg. Co., 150 Tex. 533, 243 S.W.2d 823, 824 (1951)). We also reject the
second argument: no choice-of-forum clause is needed to understand that the 2001
note plainly called for application of Oregon’s law. 
 
          We likewise reject the Saturn parties’ third and alternative argument: that the
choice of Texas law in the 1991 note and 1991 deed of trust rendered the 2001 note’s
choice-of-law clause either ambiguous or ineffectual. Because the 1991 note and 1991
deed of trust were assigned to the Dorsey Loving Trust Fund as collateral for the 2001
note, the three contracts related to the same transaction. “Instruments pertaining to the
same transaction may be read together to ascertain the parties’ intent, even if the
parties executed the instruments at different times.” IP Petroleum Co. v. Wevanco
Energy, L.L.C., 116 S.W.3d 888, 899 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied); accord, e.g., In re Palm Harbor Homes, Inc., 129 S.W.3d 636, 643 (Tex.
App.—Houston [1st Dist.] 2003, orig. proceeding), overruled on other grounds, No.
04-0490, 2006 WL 1562546 (Tex. June 9, 2006). “Only when terms of one contract
are so inconsistent with those of the other that the two cannot subsist together is there
a presumption that the second [contract] superseded the first.” IP Petroleum Co., 116
S.W.3d at 899. That is, when the second contract does not state whether or to what
extent it supersedes the parties’ first contract, and when some provision of the two
contracts conflicts, the conflicting provision of the later contract prevails. In re Palm
Harbor Homes, Inc., 129 S.W.3d at 643; Courage Co., L.L.C. v. Chemshare Corp., 93
S.W.3d 323, 333 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The remainder of
the earlier contract not in conflict with the later one may still be enforced. Courage
Co., L.L.C., 93 S.W.3d at 333. These rules also apply when, as here, one of the
contracts is a promissory note. See Hardeman v. Parish, 730 S.W.2d 813, 814 (Tex.
App.—El Paso 1987, writ ref’d n.r.e.); McPherson v. Longview United Pentecostal
Church, Inc., 540 S.W.2d 424, 431–32 (Tex. Civ. App.—Tyler 1976, writ ref’d n.r.e.);
see also Chapa v. Herbster, 653 S.W.2d 594, 600 (Tex. App.—Tyler 1983, no writ)
(construing note and deed of trust together), disapproved on other grounds by
Shumway v. Horizon Credit Corp., 801 S.W.2d 890 (Tex. 1991).
          Here, the latest contract—the 2001 note—contained a choice-of-law provision
that conflicted irreconcilably with those of the two earlier contracts—the 1991 note
and 1991 deed of trust. Because the two sets of choice-of-law clauses cannot be
reconciled, the later clause—selecting Oregon law—applied. See Courage Co.,
L.L.C., 93 S.W.3d at 333. The undisputed facts of the case bolster our conclusion. 
For example, the 2001 note is the only one actually executed among these parties: the
1991 note and 1991 deed of trust were not executed by the Dorsey Loving Trust Fund,
but were assigned to it as part of the 2001 loan transaction. Additionally, the parties
to the 2001 note actually initialed beside that note’s choice-of-law clause—a fact that,
along with the other matters discussed herein, indicates that the parties intended for
the 2001 note’s choice-of-law clause to control. 
 
          The Saturn parties rely on Georgetown Associates, Ltd. v. Home Federal
Savings & Loan Association in support of their position. See id., 795 S.W.2d 252
(Tex. App.—Houston [14th Dist.] 1990, writ dism’d w.o.j.). In Georgetown
Associates, the parties executed a note, deed of trust, and guaranty agreement. Id. at
253. The guaranty and deed of trust called for application of Texas law; the note
called for application of California law. Id. The Georgetown Associates court held
that Texas law applied, reasoning first that the plaintiff had sued on the guaranty,
which called for the application of Texas law: “A Plaintiff is entitled to sue on
whatever obligation it chooses—here, the Guaranty.” Id. That rationale given by the
Georgetown Associates court actually supports the Dorsey parties: the Saturn parties
sued to declare the 2001 note invalid and to recover statutory damages based on its
terms, and that same note called for the application of Oregon law. 
          Alternatively, the Georgetown Associates court provided another rationale for
its holding:
Second, and alternatively, the choice-of-law clauses are in irreconcilable
conflict . . . . It is reasonable to regard a pair of contradictory choice-of-law clauses as the equivalent of no choice of law at all.

Id. at 253–54. Unlike in our case, however, it appears that the three instruments in
Georgetown Associates may have been signed simultaneously, or at least nothing in
the opinion indicates that they were signed at widely different times and by different
parties, as was the case here. See id. (“When Georgetown executed a promissory note
in plaintiff’s favor, secured by a deed of trust, Defendant Katz guaranteed
Georgetown’s indebtedness . . . .”) (emphasis added). For these reasons, we
distinguish Georgetown Associates.
          We hold that the parties contracted for Oregon law to apply to a suit like this
one.
B.      The Parties’ Choice of Oregon Law Is Enforceable
          “The most basic policy of contract law is the protection of the justified
expectations of the parties.” Chase Manhattan Bank, N.A. v. Greenbriar N. Section
II, 835 S.W.2d 720, 723 (Tex. App.—Houston [1st Dist.] 1992, no writ) (citing
DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990)). “The parties’
understanding of their respective rights and obligations under the contract depends in
part upon how certain they are about how the law will interpret and enforce their
agreement.” Id. (citing DeSantis, 793 S.W.2d at 677). “When the parties reside or
expect to perform their respective obligations in different jurisdictions, they may be
uncertain about which jurisdiction’s law will govern the construction and enforcement
of the contract.” Id. (citing DeSantis, 793 S.W.2d at 677). “In an attempt to avoid this
uncertainty, they may express in their agreement their choice that the law of a
specified jurisdiction will apply to their contract.” Id. (citing DeSantis, 793 S.W.2d
at 677). “Judicial respect for their choice promotes the policy of protecting their
expectations.” Id. (citing DeSantis, 793 S.W.2d at 677).
          “However, the parties’ freedom to choose which jurisdiction’s law will apply
to their agreement is not unlimited.” Id. (citing DeSantis, 793 S.W.2d at 677). “They
cannot require that their contract be governed by the law of a jurisdiction which has
no relation whatsoever to them or their agreement.” Id. (citing DeSantis, 793 S.W.2d
at 677). “Nor can they, in their agreement, thwart or offend the public policy of the
state whose law would otherwise apply.” Id. (citing DeSantis, 793 S.W.2d at 677).
          These principles are embodied in section 187 of the Restatement (Second) of
Conflicts of Law, which the Texas Supreme Court has adopted for review of choice-of-law clauses. See DeSantis, 793 S.W.2d at 677–78 (adopting same). Section 187
provides as follows:
(1)The law of the state chosen by the parties to govern their
contractual rights and duties will be applied if the particular issue is one
which the parties could have resolved by an explicit provision in their
agreement directed to that issue.
 
(2)The law of the state chosen by the parties to govern their
contractual rights and duties will be applied, even if the particular issue
is one which the parties could not have resolved by an explicit provision
in their agreement directed to that issue, unless either
 
(a)the chosen state has no substantial relationship to the
parties or the transaction and there is no other reasonable
basis for the parties’ choice, or
 
(b)application of the law of the chosen state would be contrary
to a fundamental policy of a state which has a materially
greater interest than the chosen state in the determination
of the particular issue and which, under the rule of § 188,
would be the state of the applicable law in the absence of an
effective choice of law by the parties.
 
. . . .
Restatement (Second) of Conflict of Laws § 187 (1988) (emphasis added).
          Whether the interest that a contract charges is usurious is an issue “that the
parties could not have resolved by an explicit provision in their agreement directed to
that issue.” See id. § 187(2) & cmt. d (“Nor can [a contracting party] by [agreeing
with another] avoid issues of substantial validity, such as whether the contract is
illegal.”); cf. DeSantis, 793 S.W.2d at 678 (applying section 187(2) to non-competition
agreement and holding that parties could not have resolved agreement’s enforceability
by explicit provision in their agreement). Accordingly, our review of the choice-of-law provision in the 2001 note is governed by Restatement section 187(2). Under
section 187(2), we will apply the parties’ contractual choice of Oregon law unless (1)
Oregon has no substantial relationship to the parties or the transaction or, (2) assuming
without deciding that Texas has a materially greater interest in determining the usury
issue, application of Oregon usury law would be contrary to a fundamental Texas
public policy. See DeSantis, 793 S.W.2d at 677–78; Restatement (Second) of
Conflict of Laws § 187(2).
          1.       The Transaction or the Parties Had a Sufficient Relationship with
Oregon to Make the Choice-of-Law Clause Valid

          The Saturn parties first argue that Texas law applies despite the parties’ choice
of Oregon law because “it is clear that Texas has a more significant relationship with
the parties and the transaction than Oregon does.” This is not the proper inquiry under
Restatement section 187(2)(a), however. See Woods–Tucker Leasing Corp. of Ga. v.
Hutcheson–Ingram Dev. Co., 642 F.2d 744, 749–50 (5th Cir. 1981) (in applying Texas
law under similar Business and Commerce Code standard,


 stating, “While the Texas
contacts are indeed the most significant, nevertheless the determinative issue is, for
reasons to be stated, whether there is a reasonable relationship between Mississippi
and the transaction . . . .”); Bradt v. W. Publ’g Co., No. A14-89-00694-CV, 1991 WL
230182, at *4 (Tex. App.—Houston [14th Dist.] Oct. 31, 1991, writ denied) (not
designated for publication) (in suit to collect for sale of goods, to which similar
Business and Commerce Code standard applied, stating, “The determinative issue here
is not which state has the ‘most significant’ contacts, but whether there is ‘a
reasonable relationship’ between [the chosen state] and the transaction.”). 
          The proper inquiry is whether “the contract bears a reasonable relation to the
chosen state . . . .” First Commerce Realty Investors v. K–F Land Co., 617 S.W.2d
806, 808–09 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref’d n.r.e.); see
DeSantis, 793 S.W.2d at 678 (applying “substantial relationship” terminology for
same test).


 Here, the principal place of business of Lee D. Dorsey III, the lender’s
trustee, was in Oregon; as part of the 2001 loan transaction, the 1991 deed of trust was
escrowed at an Oregon title company; and the 2001 note was payable in Oregon. The
Dorsey parties and the transaction were thus substantially related to Oregon. See
DeSantis, 793 S.W.2d at 678–79 (holding that chosen state’s law had substantial
relationship to parties and transaction because one of parties had corporate office in
that state and because some of parties’ negotiations occurred there); see also Connor
& Walker v. Donnell, Lawson & Co., 55 Tex. 167, 1881 WL 9761, at *4 (Tex. 1881)
(recognizing in dictum that note—which was usurious in New York, but lawful in
Texas—would be valid if it had been made and endorsed by Texas residents in New
York, it had been made payable in Texas, and parties had contracted “with reference
to the laws of Texas”). Accordingly, the courts must respect the parties’ choice of
Oregon law unless the application of Oregon law offends fundamental Texas public
policy—a matter that we discuss below.
          2.       The Choice of Oregon Law Does Not Offend Texas Public Policy
          The Saturn parties also argue that the choice of Oregon law violates Texas’s
fundamental public policy of “protect[ing] its borrowers from overreaching by
lenders.” For purposes of this discussion, we assume several matters without deciding
them: (1) that Texas law has a materially greater interest in this issue than does
Oregon; (2) that the 2001 note was usurious; and (3) that the penalties would differ
under Oregon’s and Texas’s usury laws.
          Generally speaking, application of another state’s laws is not contrary to the
forum state’s fundamental public policy merely because application of the other state’s
law leads to a different result from the result that would obtain if the forum state’s law
were applied. DeSantis, 793 S.W.2d at 680 (construing Restatement (Second) of
Conflicts of Law § 187 cmt. g). Likewise, the fact that the other state’s law differs
materially from that of the forum state does not itself show that application of the other
state’s law would offend Texas public policy. Id. Rather, in determining whether
public policy would be violated by the application of another state’s law,
the focus is on whether the law in question is a part of state policy so
fundamental that the courts of the state will refuse to enforce an
agreement contrary to that law, despite the parties’ original intentions,
and even though the agreement would be enforceable in another state
connected with the transaction.

Id. Moreover, if the public policies in the forum state and the parties’ chosen state
“are the same, different approaches do not contravene [the policies] just because one
[approach] is somewhat stricter than the other.” Chesapeake Operating, Inc. v.
Nabors Drilling USA, Inc., 94 S.W.3d 163, 178 (Tex. App.—Houston [14th Dist.]
2002, no pet.).
          In Texas, there is nothing inherently violative of public policy in contracting for
another state’s usury laws to apply. See Woods–Tucker Leasing Corp. of Ga., 642
F.2d at 750–51 (“‘That the intent of [the parties’] choice of law provision was to avoid
the usury laws of some interested jurisdiction is immaterial[;] they are perfectly free
to do just that.’”) (reviewing Texas law and also quoting Nordstrum & Ramerman, The
Uniform Commercial Code & the Choice of Law, 1969 Duke L.J. 623, 628 (1969));
Bradt, 1991 WL 230182, at *4 (“Texas public policy does not forbid the choice of law
of another state to control as to usury questions if there exists a reasonable connection
between the contract and such other state.”). However, “choice of law provisions . . .
may not be used as a subterfuge to avoid the usury law that would otherwise apply.” 
 Cook v. Frazier, 765 S.W.2d 546, 549 (Tex. App.—Fort Worth 1989, no writ); see
Woods–Tucker Leasing Corp. of Ga., 642 F.2d at 750 (indicating this exception under
similar Texas Business and Commerce Code provision); id. at 751 (noting Texas
common-law rule). “A party’s choice of law will be held to constitute a sham or
subterfuge when the contacts between the transaction and the chosen state are not
reasonably related or when the contacts themselves are contrived in order to
substantiate the choice of law.” Cook, 765 S.W.2d at 549; see Hi Fashion Wigs Profit
Sharing Trust v. Hamilton Inv. Trust, 579 S.W.2d 300, 302 (Tex. Civ. App.—Eastland
1979, no writ) (recognizing same exception). This “sham and subterfuge” exception
is thus merely a restatement of the basic choice-of-law rule: that a reasonable (or
substantial) relationship must exist between the transaction or the parties and the state
whose laws the parties choose. See Woods–Tucker Leasing Corp. of Ga., 642 F.2d at
753.
          Without further elaboration, the Saturn parties first argue simply that the
application of Oregon law violated Texas’s public policy of “protect[ing] its borrowers
from overreaching by lenders.” However, courts have already held that the mere
contracting for the application of another state’s usury laws does not violate Texas’s
public policy. See id. at 750–51; Bradt, 1991 WL 230182, at *4. The Saturn parties
also argue that the choice of Oregon law was a sham or subterfuge to avoid Texas
usury law. However, we have held that a substantial relationship existed among
Oregon, the Dorsey Loving Trust Fund, and the 2001 loan transaction: such a
relationship is all that the law requires to defeat the Saturn parties’ “sham or
subterfuge” argument. See Cook, 765 S.W.2d at 549; Hi Fashion Wigs Profit Sharing
Trust, 579 S.W.2d at 302. 
          Accordingly, we hold, as a matter of law, that the parties’ choice of Oregon law
in the 2001 note was not a sham or subterfuge to avoid Texas’s usury statute. We
further hold, as a matter of law, that the parties’ choice of Oregon law did not offend
Texas’s fundamental public policy simply because that choice allowed for Oregon
usury law to apply. See Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 407,
47 S. Ct. 626, 627 (1927) (“Respondent, a Pennsylvania corporation having its place
of business in Philadelphia, could legitimately lend funds outside the state, and
stipulate for repayment in Pennsylvania in accordance with its laws, and at the rate of
interest there lawful, even though the agreement for loan were entered into in another
state, where a different law and a different rate of interest prevailed.”).
Conclusion
          We hold that the trial court did not err in rendering summary judgment on the
Saturn parties’ usury claim. We thus overrule their sole issue and affirm the judgment
of the trial court.

 
 
                                                             Tim Taft
                                                             Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.